# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-CA-01502-SCT

*THOMAS FRANKLIN SPROLES*

*v.*

*TERESA MAE SPROLES*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/05/1999 |
| TRIAL JUDGE: | HON. JAMES H. C. THOMAS, JR. |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | ORVIS A. SHIYOU, JR. |
| ATTORNEY FOR APPELLEE: | CHRISTOPHER M. HOWDESHELL |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 04/05/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/26/2001 |

**BEFORE BANKS, P.J., SMITH AND MILLS, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Thomas Franklin Sproles appeals from a chancery court judgment granting his wife, Teresa Mae Sproles, a divorce on the grounds of Thomas's habitual drunkenness and cruel and inhuman treatment but denying Thomas a divorce on the ground of adultery.

¶2. On July 23, 1997, Teresa Mae Sproles (hereinafter "Teresa") filed a Complaint for Divorce against Thomas Franklin Sproles (hereinafter "Thomas") in the Chancery Court of Lamar County, Mississippi. She alleged that she was entitled to a divorce on the grounds of cruel and inhuman treatment and habitual drunkenness or, alternatively, irreconcilable differences. Thomas filed an Answer and counterclaim denying the allegations of Teresa's complaint and alleged that he was entitled to a divorce on the grounds of adultery and cruel and inhuman treatment or alternatively, irreconcilable differences.

¶3. Teresa filed an answer to Thomas's counterclaim denying the relief sought by the Thomas.

¶4. The trial court rendered its judgment on November 3, 1998, granting a divorce to Teresa on the grounds of habitual drunkenness and cruel and inhuman treatment, but denied Thomas a divorce on the grounds of cruel and inhuman treatment and adultery. The trial court found marital assets totaling $134,333.51. The court awarded Teresa $53,733.20 from Thomas's retirement accounts; Thomas was awarded title to the marital home, two Sheltie dogs, and the 1968 Mustang. On August 6, 1999, the court entered an amendment of judgment, adjusting the value of the marital assets to $118,952.49 and awarding Teresa $46,

180.00 from the marital assets. Thomas now appeals to this Court, arguing the chancery court erred by not granting him a divorce on the grounds of adultery, the division of the marital assets was inequitable, that an audio tape of a conversation between Thomas and Teresa should not have been admitted into evidence, and a divorce should not have been granted to Teresa without findings of fact. Finding no reversible error, we affirm.

## STATEMENT OF THE FACTS

¶5. Thomas and Teresa were married on or about May 28, 1988, in Thomaston, Maine. They moved to Lamar County, Mississippi, and lived there as husband and wife until they separated on February 19, 1997. No children were born of the marriage. Teresa attended school during the first four years of her marriage and did not work. During that time, her father and Thomas paid the tuition. Thomas also paid for food, utilities, and made payments on their residence.

¶6. Purchased in 1992; the marital home was jointly owned by Thomas and Teresa. Also, in 1992, Teresa graduated and began working as a nurse at Methodist Hospital. Thomas clearly had total control of all the finances for the couple. According to the record, Teresa got all her money from Thomas, even though she had her own job. Indeed, most of Teresa's purchases were on a credit card monitored by Thomas. Teresa had no 401(k) or other retirement plan.

¶7. In 1991 or 1992, Thomas began drinking heavily. Teresa and her mother, Sheila Daniels, testified that Thomas regularly drank a case of beer at night. Furthermore, around the time Thomas's drinking increased, he became abusive towards his wife. Teresa testified, and Thomas admitted on cross-examination, that he pointed a firearm at her and threatened to kill her if she tried to leave. The record also reveals that Thomas, when intoxicated, was critical of Teresa's housecleaning, eating habits, and would make accusations of her infidelity, even to the extent of pulling her pants down. He also made Teresa feel "less than human, degraded, and depressed" by telling her that she wasted more than she was worth. On the night before Teresa left the marital home, she came home from work and found no lights on in the house and the door duct-taped. Thomas confronted Teresa while intoxicated and accused her of infidelity.

¶8. The day after the duct-taped door incident, Teresa moved out of the marital home and moved into an apartment. Thomas continued to harass his Teresa. Both Teresa and her apartment neighbor, Rashel Willis, testified that Thomas came to the apartment on several occasions and beat on the door and threatened Teresa's life. Thomas admitted that he told Teresa on the phone, "You'll be coming back in a body bag." Thomas admitted in a letter to his wife that he was at fault in the separation. He said he was sorry for his drunkenness and its effects of it on their marriage.

¶9. Teresa admitted to having an extramarital affair about a year after the parties separated. There is also evidence in the record that Thomas was having an extramarital affair after he and his wife separated.

¶10. At trial, Teresa's attorney sought to introduce audio tapes of a conversation between Thomas and Teresa in order to impeach Thomas's testimony. The chancellor admitted the audio tapes of the telephone conversations "for whatever probative value it had," over Thomas's objections that the tapes had not been produced in discovery.

¶11. Aggrieved, the Thomas appeals to this Court and assigns the following issues as error:

**I. WHETHER THE CHANCELLOR ERRED IN NOT GRANTING THOMAS A**

**DIVORCE ON THE GROUNDS OF ADULTERY?**

**II. WHETHER THE CHANCELLOR MADE AN EQUITABLE DIVISION OF MARITAL ASSETS?**

**III. WHETHER THE CHANCELLOR ERRED IN ADMITTING CERTAIN AUDIO TAPED EVIDENCE AT TRIAL?**

**IV. WHETHER THE CHANCELLOR ERRED IN GRANTING A DIVORCE TO THE TERESA ON THE GROUNDS OF HABITUAL DRUNKENNESS AND CRUEL AND INHUMAN TREATMENT WITHOUT A FINDING OF FACT?**

## STANDARD OF REVIEW

¶12. This Court has repeatedly stated that it will examine the record and accept the evidence reasonably tending to support the findings made below, along with all reasonable inferences which may be drawn therefrom and which favor the trial court's finding of fact. *In re Estate of Taylor*, 609 So.2d 390, 392 (Miss. 1992); *Williams v. Evans*, 547 So.2d 54, 58 (Miss. 1989); *Clark v. Myrick*, 523 So.2d 79, 81 (Miss. 1988). The chancery court sitting as the trier of fact has the primary authority and responsibility to assess the credibility of witnesses. *Bryan v. Holzer*, 589 So.2d 648, 659 (Miss. 1991). Moreover, where we find substantial evidence in the record supporting the findings of fact, we will seldom reverse, whether those findings be of ultimate fact or evidentiary fact. *Mullins v. Ratcliff*, 515 So.2d 1183, 1189 (Miss. 1987). Put another way, unless the chancellor's determination of fact in a divorce case is manifestly wrong, this Court will uphold the chancellor's decision. *See Dillon v. Dillon*, 498 So.2d 328, 329 (Miss. 1986).

¶13. As this Court has stated in previous decisions, these standards are general and elusive of precise meaning and application, and this Court has struggled to articulate precisely what is meant. *See Taylor*, 609 So.2d at 392. This Court has held that the findings of a chancellor are upheld unless those findings are clearly erroneous or an erroneous legal standard was applied. *Hill v. Southeastern Floor Covering Co.*, 596 So.2d 874, 877 (Miss. 1992). Furthermore, this Court has held that a finding of fact is "clearly erroneous" when "although there is evidence to support it , the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made." *Taylor*, 609 So.2d at 392 (quoting *UHS-Qualicare v. Gulf Coast Community Hosp'l, Inc*., 525 So.2d 746, 754 (Miss. 1987)).

## DISCUSSION

### I. WHETHER THE CHANCELLOR ERRED IN NOT GRANTING THE THOMAS A DIVORCE ON THE GROUNDS OF ADULTERY?

¶14. Thomas contends that he should have been awarded a divorce from Teresa on the ground of adultery. He argues that Teresa admitted under oath that she had sexual intercourse with a physician at the hospital where she was employed as a nurse, when she and Thomas were separated. Furthermore, he alleges that the chancellor committed reversible error by allowing the physician not to testify and corroborate Teresa. Teresa argues that it was not error for the chancellor to grant her a divorce on the grounds of habitual drunkenness and cruel and inhuman treatment because there was more than sufficient evidence presented to the chancellor to support this ruling. Also, Teresa denies that Thomas should be awarded a divorce on the ground of adultery.

¶15. The lack of corroboration issue can easily be dismissed. It would be illogical and unnecessary to require corroboration that is admitted by a party on the witness stand. Furthermore, the chancellor did not commit reversible error when granting divorce to Teresa on the grounds of habitual drunkenness and cruel and inhuman treatment.

¶16. As previously stated, in a domestic case, the chancellor's findings will not be reversed unless manifestly wrong, clearly erroneous, or the proper legal standard was not applied. *McKee v. Flynt*, 630 So.2d 44, 47 (Miss. 1993); *Bland v. Bland*, 620 So.2d 543, 544 (Miss. 1993). Where there is conflicting testimony, the chancellor, as the trier of fact, is the judge of "the credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence where it is capable of more than one reasonable interpretation."*McKee*, 630 So.2d at 47 (quoting *Rainey v. Rainey*, 205 So.2d 514, 515 (Miss. 1967)). A charge of habitual cruel and inhuman treatment may be sustained by a preponderance of the evidence; however, something more than unkindness, rudeness, mere incompatibility, or want of affection must be shown to sustain the charge. *Smith v. Smith*, 614 So.2d 394, 396 (Miss. 1993). Moreover, there must be some causal connection between habitual cruel and inhuman treatment and the parties' separation to sustain the charge. *McKee,* 630 So.2d at 47; *Fournet v. Fournet*, 481 So.2d 326, 329 (Miss. 1985).

¶17. In a factually similar case, the wife filed for divorce on the grounds of cruel and inhuman treatment, and the husband cross-complained for divorce on the grounds of divorce. *See McKee*, 630 So. 2d at 46. Like the case at bar, the wife admitted to adultery after the separation of the parties. *See id.* at 49. This Court affirmed the chancery court's judgment granting Teresa a divorce on the grounds she pled and denied the husband a divorce on grounds of adultery. This Court stated:

> [the wife] presented ample proof in this case to justify an award to her of a divorce on the grounds of habitual cruel and inhuman treatment. Both parties in this case wanted a divorce, and both parties are now divorced from each other. . . This Court affirms the chancellor's award to Natalie of a divorce on the ground of cruel and inhuman treatment.

*Id.* at 49.

¶18. In another factually similar case, *Parker v. Parker*, 519 So.2d 1232 (Miss. 1988), where this Court discussed the doctrine of recrimination, this Court took the position that it should deny a divorce to a party whose conduct, cruel and inhuman treatment, was the cause of the dissolution of the marriage, and grant a divorce to the party whose misconduct did not occur until after the parties were separated and the marriage, for all essential purposes, was dissolved. *See id.* at 1236. The Court held that the defense of recrimination should not have been invoked to prevent granting of divorce to the wife where there was no marital stability, the marriage had deteriorated to the point where there was no marriage, and the wife did not commit adultery during the time the parties lived together and cohabited as husband and wife. *Id.*

¶19. While there is no condonation of Teresa's conduct after the separation of the parties in the case at bar, when balanced with the uncontradicted evidence that Thomas's conduct was responsible for the dissolution of the marriage and the fact that Teresa's misconduct occurred after the separation of the parties, the chancellor did not commit reversible error in granting Teresa a divorce on the grounds of cruel and inhuman treatment and habitual drunkenness.

¶20. There is ample proof that it was Thomas's conduct that caused the dissolution of the marriage and that Teresa was entitled to a divorce on the grounds of cruel and inhuman treatment and habitual drunkenness.

Three persons, his wife, his mother-in-law, and his wife's apartment neighbor, testified to Thomas's constant state of intoxication. He threatened Teresa's life on several occasions. Furthermore, he was critical of Teresa's housecleaning, eating habits, appearance, and would make accusations of her infidelity. Teresa became so frightened of Thomas's conduct and actions that it caused her to leave the marital home. Finally, and most importantly, Thomas admitted in a letter written to Teresa after she left their marriage, that his actions were the cause of their marital discord.

¶21. The chancellor properly denied the Thomas's counterclaim for a divorce on grounds of adultery.

## II. WHETHER THE CHANCELLOR MADE AN EQUITABLE DIVISION OF MARITAL ASSETS?

¶22. The equitable distribution of marital assets is within the discretion of the chancery court. *Yancey v. Yancey*, 752 So.2d 1006, 1012 (Miss. 1999) (citing *Arthur v. Arthur*, 691 So.2d 997, 1002 (Miss. 1997); *Ferguson v. Ferguson*, 639 So.2d 921, 930 (Miss. 1994)). The chancellor's findings will not be reversed unless manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. *Yancey*, 752 So.2d at 1012. In the case sub judice, the chancellor did not abuse his discretion.

¶23. In *Ferguson*, this Court set out guidelines that chancery courts should consider, where applicable, when attempting to effect equitable division of marital property. 639 So. 2d at 928. The chancery court should consider: (1) substantial contribution to the accumulation of property; (2) degree to which each spouse has expended, withdrawn, or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree, or otherwise; (3) the market value and emotional value of assets subject to distribution; (4) value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse; (5) tax or other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution; (6) extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties; (7) needs of the parties for financial security with due regard to the combination of assets, income, and earning capacity; and (8) any other factor which in equity should be considered. *Id.* at 928. Furthermore, the chancellor is not required to address each and every factor; indeed, the chancellor may consider only the factors he finds applicable to the marital property at issue. *Weathersby v. Weathersby*, 693 So.2d 1348, 1354 (Miss. 1997).

¶24. It is clear from a reading of the judgment and amendment of judgment that the chancellor carefully identified and valued all marital assets, broke out the equitable value of each, and gave Thomas credit for contribution that he made to the marital assets. Also, the judgment states, "Having considered the requirements for an equitable distribution of the marital assets of the parties. . . ." Moreover, it is evident from a reading of the judgment that the chancellor took into consideration the value of support the Thomas furnished Teresa for her education, the comparative income capabilities of both parties, and the prior division of marital assets. All of these factors relate to the *Ferguson* factors.

¶25. Thomas argues that the chancellor did not consider all the *Ferguson* factors in considering the distribution of marital assets. As this Court has stated, the chancellor does not have to consider all the *Ferguson* factors. *See Weathersby*, 693 So.2d at 1354. Additionally, because the chancellor applied the correct legal criteria and determined which criteria he considered applicable, it simply cannot be said that the chancellor was manifestly wrong, clearly erroneous, or applied the wrong legal standard.

¶26. Thomas also argues that the chancellor committed reversible error in awarding him $8,500 in credit in the initial judgment, but only $3,500 in the amendment of judgment. Thomas has obviously not carefully read the judgment, as the chancellor was precise in setting out how he reached the marital distribution. The judgment reads as follows:

> The home equity, retirement and savings assets total $134,333.51 as marital assets. Defendant shall get a credit for the $6,500.00 initial home down payment and $2,000 taken by Plaintiff at separation from the joint account, which, less the value of his pickup truck and Mustang, totalling $5,000, **leaves him a credit of $3,500** making the total marital assets to be divided of $129,333.00.

(emphasis added). Obviously, the chancellor was not manifestly wrong in his calculations in the amendment of the judgment since the judgment has the same amount credited to the Thomas.

¶27. There is no basis for reversal on this issue, and the decision of the trial court is upheld.

### III. WHETHER THE CHANCELLOR ERRED IN ADMITTING CERTAIN AUDIO TAPED EVIDENCE AT TRIAL?

¶28. Thomas argues that during trial, Teresa was allowed to introduce into evidence an audio tape, over his objection.

¶29. Where a party specifically requests statements of the opposing party, and those statements are not provided, reversible error may occur. *See **Wallace v. Employers Mut. Cas. Co.***, 443 So.2d 843, 848 (Miss. 1983). The admission of evidence is within the discretion of the chancellor, and reversal is not warranted unless judicial discretion is abused. ***Smith v. Jones,*** 654 So.2d 480, 486 (Miss. 1995). Where the admission of evidence which was allegedly improperly admitted was not a determining factor in the chancellor's decision, and where the chancellor looked to the weight of other evidence, the admission of the evidence is harmless. *See **Limbaugh v. Limbaugh***, 749 So.2d 1244, 1247-48 (Miss. Ct. App.1999). In addition, where a chancellor admits evidence "for what its worth," the judgment shall not be reversed for improper admission of the evidence unless it affirmatively appears from the entire record that the judgment has resulted in a miscarriage of justice. ***Illinois Cent. R.R. v. Williams***, 242 Miss. 586, 606, 135 So.2d 831, 839 (1961).

¶30. Thomas contends that there was a failure to disclose this tape in response to his interrogatory seeking disclosure of "any witness, their expected testimony, and any documentary evidence." While Thomas did not specifically mention audio tapes, it is at least arguable that audio tapes are included in the term "documentary evidence." *See* M.R.C.P. 34 .

¶31. However, even if this Court were to find that the admission of the audio tapes was in error, the admission was harmless error. At trial, there was sufficient testimony from Teresa and other witnesses of cruel and inhuman treatment by Thomas to warrant a divorce on these grounds. Moreover, there is no indication from reading the judgment or the trial transcript that the audio tapes were determinative in the chancellor's decision. Indeed, the chancellor, on record, admitted the evidence "for whatever probative value it has, " indicating that the substance of the tape had no special meaning to the chancellor.

¶32. There was no miscarriage of justice that occurred with the admission of the audio tapes into evidence. There was ample evidence in the record to support a divorce on the ground of cruel and inhuman treatment.

## IV. WHETHER THE CHANCELLOR ERRED IN GRANTING A DIVORCE TO TERESA ON THE GROUNDS OF HABITUAL DRUNKENNESS AND CRUEL AND INHUMAN TREATMENT WITHOUT A FINDING OF FACT?

¶33. Thomas contends that the chancellor's statements in the judgment are not sufficiently detailed findings of fact as required by case law in the State of Mississippi. This issue is without merit.

¶34. Findings of fact made by the chancellor may not be set aside or disturbed on appeal unless manifestly wrong. *Cheek v. Ricker*, 431 So.2d 1139, 1143 (Miss. 1983). This is so whether the finding relates to an evidentiary fact or an ultimate fact. *Id.* A corollary principle is that with respect to issues of fact where the chancellor made no specific finding, this Court is required to assume that the chancellor resolved all such fact issues in favor of Teresa. *Id.* at 1143.

¶35. In the judgment, the chancellor stated:

> [T]he Court finds by clear and convincing, corroborated testimony that Defendant drank alcoholic beverages regularly during the course of the marriage as to be habitually drunk on frequently enough occasion which resulting in conduct so counter to what would be acceptable in a marriage and which further resulted in the separation of the parties giving Plaintiff grounds for divorce as contemplated by section 93-5-1 of the Mississippi Code of 1972. The conduct of Defendant during the periods of intoxication resulted in threats toward Plaintiff involving firearms on several occasions would also constitute habitual cruel and inhuman treatment by any standard of normalcy expected between a husband and wife in a marriage so as to put Plaintiff in fear of her safety and well being.

It is clear from a thorough reading of the record that the findings of the chancellor are sufficiently supported by the record, and the chancellor's findings are not "manifestly wrong." Teresa; her mother, Sheila Daniels; and Teresa's apartment neighbor, Rashel Willis, testified that they had seen Thomas drunk on a regular basis and that he had violent tendencies. Teresa stated on the record that Thomas pointed a firearm at her and threatened to kill her if she tried to leave. She also testified that he would clean his firearms in front of her, when he knew it frightened her. Further, Thomas admitted that he had pointed a firearm at his wife. Added to this all of these indications of violence was the fact that Thomas made repeated threats on his wife's life and harassed and stalked her once she moved out of the marital home as indicated by the sheriff's report in the record.

¶36. Thomas argues that it was error for the chancellor to find that Thomas threatened Teresa with firearms on several occasions in light of the fact that Thomas denied doing this. This Court has clearly stated that the chancellor, as a trier of fact, is charged with assessing the credibility of the witnesses and deciding what weight to give the testimony and evidence. *Ellis v. Ellis*, 248 Miss. 483, 490, 160 So.2d 904, 907-08 (1964). The chancellor sees the witnesses first hand and can observe their demeanor. He is in a much better position to assess the worth of any particular testimony than is an appellate court only reviewing a written transcript. In the case sub judice, the chancellor made no specific finding of fact regarding the credibility of the Thomas's testimony. Therefore, it must be assumed he did not give much weight to Thomas's testimony, and, instead, gave more weight and credibility to Teresa's testimony.

¶37. Thomas also argues that the testimony regarding firearms was not corroborated. A divorce will not be granted on the uncorroborated testimony of the complainant, except where the circumstances make such corroboration not reasonably possible. *Anderson v. Anderson,* 190 Miss. 508, 200 So. 726, 727 (1941)

. Teresa's testimony revealed that the incidents with firearms occurred while the parties were alone and inside the house, making corroboration not reasonably possible.

¶38. The chancellor's findings of fact are sufficient under Mississippi law.

## CONCLUSION

¶39. There is no indication that the chancellor was manifestly wrong, abused his discretion, or applied the wrong legal standard. To the contrary, the chancellor's decision was supported by both the law and the evidence.

¶40. The chancellor's decision to deny Thomas a divorce on the ground of adultery while granting a divorce on the grounds of habitual drunkenness and cruel and inhuman treatment is supported by the evidence. A careful reading of the record indicates that Thomas's conduct was the cause of separation and dissolution of the marriage. Furthermore, no error occurred in the determination of the distribution of marital assets because the chancellor clearly showed the criteria and the breakdown of the marital assets. Also, there was no error in admitting the audio tape into evidence because the record does not reveal that Thomas requested such evidence in discovery. Moreover, the record does not show that the chancellor placed any weight on the audio tape in making his determination. Finally, the chancellor made specific findings of fact that were supported by the evidence.

¶41. Therefore, the judgment of the Lamar County Chancery Court is affirmed.

¶42. **AFFIRMED.**

> **BANKS, P.J., MILLS, WALLER, COBB, DIAZ AND EASLEY, JJ., CONCUR. PITTMAN, C.J., CONCURS IN RESULT ONLY. McRAE, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**