MYERS, J.,
for the Court:
¶ 1. The Lintons and the Crosses were adjoining property owners in Lauderdale County. A fence was north of the Linton-Cross boundary. The Crosses sued to quiet title in the area that was north of their surveyed boundary but south of the fence line. The chancery court confirmed title to the property in the Crosses. The Lintons now appeal, raising one issue for our consideration: Did the trial court err in finding the Crosses established their title through adverse possession?
Facts and Procedural History
¶ 2. J.T. Lackey transferred a parcel of real property to his great-niece, Anita Linton and her husband, Harley Linton, on May 10, 1958. The description in the deed read:
The SW /4 of the NW 14 of Section 2, Township 7, Range 16, Lauderdale County, Mississippi.
¶ 3. On January 10, 1959, Lackey conveyed a ten-acre tract to Dalma Grissom.[1] The deed described this tract as:
The NE 14 of the NW 54 of SW 14 of Section 2, Township 7, Range 16, Laud-erdale County, Mississippi.
¶ 4. Grissom later conveyed this property to the Crosses. The common boundary between the Crosses and the Lintons is the north quarter section line of the NW 14 of the SW 14 of Section 2, Township 7, Range 16 East, Lauderdale County, Mississippi and the south quarter section line of the SW 14 of the NW 14 of Section 2, Township 7, Range 16 East, Lauderdale County, Mississippi.
¶ 5. This dispute arose out of the existence of a fence that Avery had considered her northern boundary. In 1995, the Lin-tons had their property surveyed and the fence was found to lie north of the common boundary. The east end of the fence is approximately 21.3 feet north of the common boundary, and the west end is approximately 9.34 feet north of the common boundary. The fence was in existence when the Lintons received the property. Since the land had previously belonged to her great-uncle, Mrs. Linton gave testimony that she could not remember a time when the fence was not there.
¶ 6. After hearing testimony and receiving evidence, the chancery court ruled in favor of the Crosses. The chancellor later granted the Lintons’ motion for a new trial for the limited purpose of allowing the Crosses to call another witness. Following that witness’s testimony, the chancellor denied the Lintons’ request to reverse the judgment of the court, or in the alternative, for a new trial. The Lintons now appeal.
Standard of Review
¶ 7. It is well established that this Court will not reverse a chancellor’s findings unless they are clearly erroneous. Sproles v. Sproles, 782 So.2d 742, 746 (¶ 12) (Miss.2001) (citing Dillon v. Dillon, 498 So.2d 328, 329 (Miss.1986)). The supreme court has illustrated this standard by saying, “a finding of fact is ‘clearly erroneous’ when ‘although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.’ ” Id. at 746 (¶ 13) (quoting In re Estate of Taylor, 609 So.2d 390, 392 (Miss.1992)) (quoting UHS-Qualicare v. Gulf Coast Cmty Hosp., Inc., 525 So.2d 746, 754 (Miss.1987)).
*379 Legal Analysis
¶ 8. There are six elements that a claim of adverse possession must meet to be successful: the possession must be (1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4)continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful. Crump v. State, 823 So.2d 1213, 1215 (¶ 9) (Miss.Ct.App.2002). The chancellor considered these elements and found the facts sufficient to support the Crosses’ claim of adverse possession. We will review the evidence that supports the chancellor’s finding.

Actual or Hostile Claim of Ownership

¶ 9. From the time the Crosses purchased the property in 1979 until the time of the 1995 survey, they believed the fence was the boundary between their property and the Lintons’. In fact, this was the belief of the Crosses’ predecessor in interest, the Grissoms. Once the Crosses moved onto the property in 1988, they conducted acts that would display claims of ownership, such as bushhogging the disputed area, fertilizing the pecan trees and gathering pecans on the disputed area, and constructing a horse pen on the disputed area.
¶ 10. The chancellor also believed that the Lintons thought the fence .was their boundary until the 1995 survey. While the Lintons’ testimony would suggest otherwise — -that they thought it was only a farm fence to control cattle — the chancellor found “the existence of this fence for over sixty-five years challenges the [Lintons’] testimony. The [Lintons’] actions are more consistent with an opinion that the fence was the boundary between the two parcels of land.” Indeed, there was uncon-tradicted evidence that the Lintons had not used or occupied the disputed area and that they did not object to the Crosses use of the disputed area.

Open, Notorious, and Visible

¶ 11. As the Lintons lived approximately 200 yards away from the fence line, the Crosses’ acts of ownership, or the results of them, should have been easily visible to them. The land between the Lin-tons’ house and the disputed area was not heavily wooded, and the area was clearly visible from their house.

Continuous and Uninterrupted for Ten Years

¶ 12. Uncontroverted testimony demonstrated that the Crosses performed the above-mentioned acts from 1979 until at least 1995, when a new survey showed that the fence was not the boundary between their property and the Lintons’.

Exclusive

¶ 13. There was no evidence that anyone other than the Crosses had used the disputed property from at least 1979 until 1995.

Peaceful

¶ 14. The Lintons never objected to the Crosses’ use of the disputed property. This was true even after the 1995 survey. In 1982, the Crosses and Lintons jointly repaired the fence that was the alleged boundary between their respective parcels.
Conclusion
¶ 15. In order to reverse a chancellor’s findings, an appellant has a high burden of proof. The Lintons have not met that burden. We affirm the chancellor’s findings.
¶ 16. THE JUDGMENT OF THE CHANCERY COURT OF LAUDER-DALE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
*380 McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, CHANDLER AND GRIFFIS, JJ., CONCUR.

. At the time of the conveyance, Grissom was unmarried and used the last name Avery.