IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI
NO. 2017-CA-00608-COA

**STEPHEN DEMOND ANDERSON SR.**                                    APPELLANT

**v.**

**EMMARIE G. FLAGGS ANDERSON**                                         APPELLEE

DATE OF JUDGMENT:               03/17/2017
TRIAL JUDGE:                    HON. JANE R. WEATHERSBY
COURT FROM WHICH APPEALED:      WARREN COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:         DAVID NEIL McCARTY
ATTORNEY FOR APPELLEE:          DAVID M. SESSUMS
NATURE OF THE CASE:             CIVIL - DOMESTIC RELATIONS
DISPOSITION:                    AFFIRMED: 03/19/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE BARNES, C.J., WESTBROOKS AND LAWRENCE, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     In 2012, Emmarie Anderson filed for divorce against Stephen Anderson Sr. on the grounds of habitual cruel and inhuman treatment and adultery.  In May 2016, the Warren County Chancery Court Clerk informed Emmarie that the case was set to be dismissed without prejudice under Mississippi Rule of Civil Procedure 41(b).  A few months later, Stephen filed for divorce against Emmarie on the grounds of habitual cruel and inhuman treatment and adultery.  Emmarie then resurrected her 2012 case, amending her complaint but maintaining her grounds for divorce.  The two cases were consolidated.

¶2.     After a trial, the chancellor found Stephen guilty of habitual cruel and inhuman treatment.  The chancery court awarded Emmarie custody of their three children and Stephen

visitation. Stephen was also ordered to pay child support. As part of the property division, the court awarded Emmarie use and possession of the marital home and ordered Stephen to continue paying the mortgage on the marital home, including the taxes and insurance. On appeal, Stephen argues that the chancery court erred in finding him at fault for the divorce and for ordering him to continue paying the mortgage on the marital home. Finding no error, we affirm the chancery court's judgment.

**FACTS**

¶3. Stephen and Emmarie dated throughout high school and eventually married in 2007. They had three children together—N.F., born in 2000, S.F., born in 2006, and A.F., born in 2008.[1]

¶4. The couple had a turbulent marriage from the beginning. At trial, Emmarie testified that, during their first year of marriage, Stephen would have outbursts and "tear up things in the house." She also testified that he would "beat the hell out of [her]" two to three times a week. Emmarie detailed numerous violent instances over the course of their marriage. For example, around 2009, Stephen punched her in the face and caused her to temporarily lose hearing in her right ear. Both Emmarie's mother and the couple's eldest son, N.F., testified that they witnessed Stephen physically abuse Emmarie throughout the marriage.

¶5. When asked about her divorce filing in 2012, Emmarie explained that she and Stephen later reconciled, so she did not pursue the divorce. As part of their reconciliation, the couple

---

[1] The children's names are initialed to protect their identities.

2

signed a notarized document, with Stephen promising he would get help. According to Emmarie, Stephen never sought help, and their marriage kept suffering as a result. The couple eventually separated in July 2016, and Stephen moved out of the marital home. In October and November of 2016, Emmarie filed two restraining orders to protect herself and the children from Stephen. The second restraining order remained in effect until the trial.

¶6. Emmarie admitted at trial that she committed adultery—once on October 30, 2015. She also testified that Stephen had admitted to several affairs during the marriage. Stephen denied Emmarie's adultery allegations.

¶7. The court found Stephen guilty of habitual cruel and inhuman treatment. After an analysis of the *Ferguson*[2] factors, the court found that Emmarie and the children should continue living in the marital home, with Stephen continuing to pay the mortgage. The court specified that Stephen and Emmarie could sell the home when their youngest child reached age 21 or was emancipated, with Emmarie receiving one-third equity and Stephen receiving two-thirds equity. The chancellor also ordered that Emmarie be responsible for the upkeep, maintenance, and utilities of the home. The court denied Emmarie's request for alimony. Finally, the court awarded Stephen and Emmarie joint legal custody and Emmarie physical custody of the children. Stephen was ordered to pay $693.97 per month in child support. Stephen appealed.

## STANDARD OF REVIEW

---

[2] *Ferguson v. Ferguson*, 639 So. 2d 921 (Miss. 1994).

¶8. "When reviewing a decision of a chancellor, this Court applies a limited abuse of discretion standard of review." *Mabus v. Mabus*, 890 So. 2d 806, 810 (¶14) (Miss. 2003). We "will not disturb the chancellor's opinion when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *Id.* at 819 (¶53). However, "[a] chancellor's conclusions of law are reviewed de novo." *Lowrey v. Lowrey*, 25 So. 3d 274, 285 (¶26) (Miss. 2009).

## DISCUSSION

### I. Divorce

¶9. Stephen argues that because he proved that Emmarie committed adultery and Emmarie's adultery caused him to leave, he should have been granted a divorce on that ground. Stephen further argues that Emmarie should not have been granted a divorce on habitual cruel and inhuman treatment because she reconciled with him after her 2012 claim.

¶10. "There can be but one divorce granted. Where each party has requested a divorce and offers proof sufficient to establish a basis for divorce, the chancellor must then determine which of the parties will be granted a divorce." *Garriga v. Garriga*, 770 So. 2d 978, 983-84 (¶23) (Miss. Ct. App. 2000) (citing *Hyer v. Hyer*, 636 So. 2d 381, 382 (Miss. 1994)). Here, Stephen filed for divorce on the grounds of habitual cruel and inhuman treatment and adultery. Emmarie counterclaimed on the same grounds.

¶11. In *Sproles v. Sproles*, 782 So. 2d 742, 746 (¶14) (Miss. 2001), the chancellor granted

4

the wife a divorce on the grounds of habitual drunkenness and habitual cruel and inhuman treatment instead of granting the husband a divorce on the ground of adultery even though his wife admitted at trial that she had committed adultery. Our supreme court affirmed the chancellor, finding that "[t]here [was] ample proof that it was [the husband's] conduct that caused the dissolution of the marriage and that [the wife] was entitled to a divorce on the grounds of cruel and inhuman treatment and habitual drunkenness." *Id*. at 747 (¶20). In *Boutwell v. Boutwell*, 829 So. 2d 1216, 1219 (¶¶40-43) (Miss. 2002), our supreme court dealt with a nearly identical issue and relied on *Sproles* to affirm the chancellor's grant of divorce to the wife on the grounds of habitual cruel and inhuman treatment.

¶12. Here, Emmarie admitted that she committed adultery. However, the chancellor also heard testimony from Emmarie, Emmarie's mother, and Emmarie and Stephen's son about Stephen's physical abuse upon Emmarie that started prior to and throughout the marriage. Ultimately, the chancellor determined that it was Stephen's continued course of physical abuse upon Emmarie that caused the breakdown of the marriage. Finding the chancellor's decision was supported by substantial evidence, we affirm the chancery court's grant of divorce to Emmarie on the ground of habitual cruel and inhuman treatment.

## II. Mortgage Payments

¶13. Stephen also argues that the chancellor erred in ordering him to continue paying the mortgage. For his argument, he attempts to classify the mortgage payment as alimony, or in the alternative, child support.

¶14.   The court's order made clear that Stephen's mortgage payment was part of the equitable distribution.  In fact, the court explicitly stated that it was not awarding Emmarie alimony.  The court also listed the monthly amount for Stephen's child-support obligation, which was in no way tied to the mortgage payment.

¶15.   Equitable distribution is "[t]he division of marital property by a court in a divorce proceeding, under statutory guidelines that provide for a fair, but not necessarily equal, allocation of property between the spouses."  Black's Law Dictionary (10th ed. 2009).  In determining the equitable division of marital assets, the chancery court considered the applicable factors in *Ferguson*.[3]  The chancellor noted that Stephen was the breadwinner of the family and had always paid the mortgage on the marital home.  The chancellor also noted that, although Emmarie had contributed financially during some of the marriage, she primarily stayed at home with the children.  In awarding Emmarie use of the marital home, the chancellor emphasized that Emmarie and the children had been living there and still needed a place to live.

¶16.   When dividing marital property, a chancery court may order continued joint ownership of the marital home with possession by one spouse.  *See, e.g.*, *Selman v. Selman*, 722 So. 2d 547 (Miss. 1998).  Generally, it is better to award the home to the custodial parent.  *Hankins v. Hankins*, 729 So. 2d 1283, 1287 (¶19) (Miss. 1999).  Further, a chancellor may order one spouse to pay the mortgage on the marital home until a child's majority, at which point the

---

[3] 639 So. 2d at 928-29.

6

house may be sold and proceeds split. *See Selman,* 722 So. 2d at 552 (¶¶19-20). Here, the court awarded the home to Emmarie, the custodial parent, and ordered Stephen to continue paying the mortgage until the youngest child reached age 21 or was emancipated, at which time he would receive two-thirds equity and she one-third equity. After review, we find no abuse of discretion in the chancellor's decision regarding property division.

## CONCLUSION

¶17.    We find the chancellor did not manifestly err in her findings of fact or conclusions of law regarding the grounds for divorce. We also find that the chancellor neither committed manifest error nor abused her discretion in the manner or method in which she divided the marital estate. Thus, we affirm.

¶18.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD AND C. WILSON, JJ., CONCUR. McCARTY, J., NOT PARTICIPATING.**