# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-01416-COA

**ALVIN JOHNSON, SR.**                                                          **APPELLANT**

**v.**

**ANNA JOHNSON**                                                                   **APPELLEE**

DATE OF JUDGMENT:              09/28/2018
TRIAL JUDGE:                          HON. DENISE OWENS
COURT FROM WHICH APPEALED:   HINDS COUNTY CHANCERY COURT,
                                             FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:       MARK A. CHINN
ATTORNEYS FOR APPELLEE:       FELECIA PERKINS
                                             JESSICA NICOLE AYERS
NATURE OF THE CASE:              CIVIL - DOMESTIC RELATIONS
DISPOSITION:                          AFFIRMED IN PART; REVERSED AND
                                             REMANDED IN PART - 06/02/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE WILSON, P.J., GREENLEE AND LAWRENCE, JJ.

### GREENLEE, J., FOR THE COURT:

¶1.     Alvin and Anna Johnson consented to a divorce on the ground of irreconcilable differences and agreed that the Hinds County Chancery Court would determine and distribute the marital estate. After trial, the chancellor entered an opinion and final judgment dividing the marital estate and awarding Anna lump-sum alimony. On appeal, Alvin alleges the chancellor erred by (1) not applying the *Ferguson*[1] factors, (2) deviating from the parties' written agreement, and (3) awarding lump-sum alimony to Anna. We find no error and

---

[1] *Ferguson v. Ferguson*, 639 So. 2d 921 (Miss. 1994).

affirm regarding the second issue, but we reverse and remand for further proceedings consistent with this opinion as to the first and third issues.

## FACTS AND PROCEDURAL BACKGROUND

¶2. Alvin and Anna met in 1990 and married in 1992. Anna resided in Alvin's home from 1990 until they were officially divorced in 2018. At the time of marriage, Alvin and Anna worked at the Delphi Packard Electric plant. Alvin retired from the plant in 2006 after thirty-one years of service. Anna continued to work there until the plant closed in 2009. Alvin and Anna had two children during their marriage, but Alvin also had four children prior to their marriage.

¶3. Alvin opened a joint checking account with his mother in 1976. Anna was added to that account sometime after they married in 1992. With this account, Alvin purchased his first home at the age of twenty-four and owned the home for approximately eleven years prior to his marriage. The home was refinanced shortly after Alvin and Anna's marriage. The refinance resulted in a ten-year mortgage, which was paid off using the joint checking account. Improvements made to the home also were paid from the joint checking account, but it is disputed how much each individual paid for the additions to the home. The parties also dispute the amount paid by each individual regarding the home's general upkeep.

¶4. In 2004, Alvin's brother purchased a rental home near Alvin and Anna's marital home. Two years after that, Alvin's brother executed a quitclaim deed conveying the rental home to himself and Alvin. The chancellor found, but the parties dispute, that Alvin used marital funds to make repairs to the rental home and pay for its upkeep. Alvin concedes that

2

he received rental income from the property in 2013 and 2014.

¶5.     In addition to these two homes, Alvin and Anna possess various retirement accounts. Both Alvin and Anna received a severance and pension after they departed from Delphi Electric Packard. Alvin also receives military benefits from his time spent in the National Guard. He also has an additional 401(k) plan that he claims he started in 1981, and he receives a second pension from time spent working at General Motors (before his marriage). Anna has an individual retirement account, which she rolled over from her personal savings after she left Delphi Packard Electric. After the plant's closure, Anna started to work for the Department of Public Safety and accumulated funds in a Public Employment Retirement System account. In 2014, Anna moved from her position with the State and began working at the Nissan plant. At Nissan, Anna accumulates funds into a 401(k) plan.

¶6.     Alvin and Anna separated in 2013. Alvin claims that Anna was the cause of the separation. He accuses Anna of having an affair.

¶7.     In 2014, Alvin's family friend passed away. The friend named Alvin as her personal representative and left a portion of her estate to him. The parties also dispute the assets that Alvin acquired as a result of that estate.

¶8.     On September 6, 2016, Anna filed a complaint for divorce with a request for temporary relief. Alvin answered and counterclaimed for divorce on the grounds of adultery and habitual cruel and inhuman treatment. In the alternative, Alvin requested a divorce on the ground of irreconcilable differences. The chancery court held a hearing on October 18, 2016, to determine whether Anna was entitled to temporary relief as she sought exclusive use

3

and possession of the marital home, temporary child support, and child custody. A temporary order was entered on August 29, 2017.

¶9. On May 2, 2018, Alvin and Anna filed a "Joint Motion And Consent To Trial And Divorce On The Ground of Irreconcilable Differences" pursuant to Mississippi Code Annotated section 93-5-2(3) (Rev. 2013). The chancellor thereafter signed an order granting that motion on May 3, 2018. In the motion, the parties stipulated to the division of various personal properties. They also submitted the following issues to the court for its determination: (1) "the disposition of the marital domicile"; (2) "the value of the marital domicile"; (3) "[the] percentage of equity . . . awarded to each party from the marital domicile"; (4) "should [both parties] continue to reside in the marital domicile until it is sold"; (5) "whether the rental h[ome] . . . is a marital asset"; (6) "the value of the rental h[ome]"; (7) "the disposition of the [rental home] and what percentage of equity . . . awarded to each party"; (8) "the division of the parties' pensions and retirement accounts, including [Alvin's] military benefits"; (9) "[whether Anna is] entitled to [Alvin's] military survivors' benefits"; (10) "whether [Alvin] owes . . . [Anna for their daughter's] educational costs"; (11) alimony, if any; (12) attorney's fees; and (13) rights to a laptop.

¶10. The trial began on May 3, 2018. At trial, the chancery court noted that two "additional stipulations" were reached by the parties. The first concerned the value of the marital home (issue 2), which the parties "agreed to stipulate" was valued at $130,000. The second stipulation regarded educational costs owed by Alvin (issue 10). In that stipulation, the parties "agreed" that Alvin would pay $20,000 to Anna for their daughter's educational

4

costs. The parties re-appeared on May 14, 2018, and again via telephonic conference on June 12, 2018. On July 9, 2018, the chancellor entered an order distributing the marital estate. Alvin then timely filed a motion to amend the judgment or for a new trial, and Anna filed a motion for clarification. As a result, the chancery court entered a second order on September 28, 2018, amending its July 9 order. It is from the amended order that Alvin now appeals.

## STANDARD OF REVIEW

¶11. This Court applies a "limited" abuse-of-discretion standard when reviewing a chancellor's decision. *Mabus v. Mabus*, 890 So. 2d 806, 810 (¶14) (Miss. 2003). We "will not disturb the chancellor's opinion when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *Id.* at 819 (¶53). However, "[a] chancellor's conclusions of law are reviewed de novo." *Lowrey v. Lowrey*, 25 So. 3d 274, 285 (¶26) (Miss. 2009).

¶12. We review the chancellor's distribution of the marital estate "to ensure that the chancellor followed the appropriate standards and did not abuse his discretion." *Inge v. Inge*, 227 So. 3d 1185, 1188 (¶8) (Miss. Ct. App. 2017) (quoting *McKnight v. McKnight*, 951 So. 2d 594, 596 (¶6) (Miss. Ct. App. 2007)). "Alimony awards are [also] within the sound discretion of the chancellor." *Speed v. Speed*, 757 So. 2d 221, 224 (¶6) (Miss. 2000) (citing *McEachern v. McEachern*, 605 So. 2d 809, 814 (Miss. 1992)).

## DISCUSSION

I. **Equitable Division of the Marital Home, Rental Home, and Military Benefits**

¶13. Alvin argues the chancery court committed manifest error by failing to make a record

of the findings of fact and conclusions of law regarding the equitable distribution of the marital home, rental home, and Alvin's military benefits. Anna contends the court's findings were sufficient. Upon review, we agree with Alvin. *See Bullock v. Bullock*, 218 So. 3d 265, 273-74 (¶25) (Miss. Ct. App. 2017) (reversing and remanding the case for the chancellor to conduct a *Ferguson* analysis on the record).

¶14. It is well-settled that the chancellor should make findings of fact and conclusions of law (regarding equitable distribution of the marital estate) a part of the record to aid an appellate court in its review. In *Ferguson*, our supreme court stated:

> Given the development of domestic relations law, this Court recognizes the need for guidelines to aid chancellors in their adjudication of marital property division. Therefore, this Court directs chancery courts to evaluate the division of marital assets by the following guidelines and to support their decisions with findings of fact and conclusions of law for purposes of appellate review.

*Ferguson*, 639 So. 2d at 928. The court continued, "To aid in appellate review, findings of fact by the chancellor, together with legal conclusions drawn from those findings, **are required**." *Id.* at 929 (emphasis added). As noted by the parties, the factors in that analysis include:

1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:

    a. Direct and indirect economic contribution to the acquisition of the property;

    b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and

    c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the

assets.

2.      The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.

3.      The market value and the emotional value of the assets subject to distribution.

4.      The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;

5.      Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;

6.      The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;

7.      The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,

8.      Any other factor which in equity should be considered.

*Id.* at 928.

¶15.   Since the formation of the *Ferguson* guidelines, our supreme court has held that "[t]he failure to consider all applicable *Ferguson* factors is error and mandates reversal." *Lowrey*, 25 So. 3d at 286 (¶29). However, only those factors "applicable" to the property in question must be considered. *Sproles v. Sproles*, 782 So. 2d 742, 748 (¶25) (Miss. 2001) (citing *Weathersby v. Weathersby*, 693 So. 2d 1348, 1354 (Miss. 1997)).

¶16.   In *Segree v. Segree*, 46 So. 3d 861, 865 (¶11) (Miss. Ct. App. 2010), the chancery court made the marital property distribution and mentioned that it had "considered the

testimony of witnesses, exhibits, and the law applicable thereto[.]" The chancellor, however, did not reference the *Ferguson* factors or provide analysis for the distribution and awards set forth in its judgment. *Id.* On appeal to this Court, we held that because the chancery court did not "examine the marital property at issue and make a factual determination[] using *Ferguson*," "we must reverse the chancellor's judgment and remand the case for specific findings of fact under *Ferguson*." *Id.* at 866 (¶12).

¶17.   Likewise, in *Kilpatrick v. Kilpatrick*, 732 So. 2d 876, 881 (¶19) (Miss. 1999), our supreme court reversed a chancellor's judgment for failing to make the required findings of fact and conclusions of law regarding the distribution of the marital estate. The court stated that "[w]ithout findings from the [c]hancellor . . . , we cannot determine if the distribution of property outlined . . . meets the standards of equitable distribution by *Ferguson*." *Id.*

¶18.   Here, the chancellor divided the property in the amended September 28 order but failed to mention how the *Ferguson* factors were applied to support the division of the marital estate. In this case, as in *Bullock*, *Segree*, and *Kilpatrick*, the chancellor's failure to explain the bases for her decisions requires us to find that the chancery court manifestly erred. As a result of the chancellor's failure to apply the *Ferguson* factors, we reverse and remand the matter to the chancery court.

## II.   Educational Costs

¶19.   Alvin argues that the chancery court "deviated" from the parties' written consent by requiring him to pay a lump sum of $20,000 for their daughter's educational costs. Anna contends the parties stipulated to the lump-sum amount. We agree with Anna.

¶20. Under Mississippi Code Annotated section 93-5-2(3),

> [i]f the parties are unable to agree upon adequate and sufficient provisions for the custody and maintenance of any children of that marriage or any property rights between them, they may consent to a divorce on the ground of irreconcilable differences and permit the court to decide the issues upon which they cannot agree. Such consent must be in writing, signed by both parties personally, must state that the parties voluntarily consent to permit the court to decide such issues, which shall be specifically set forth in such consent, and that the parties understand that the decision of the court shall be binding and lawful judgment.

¶21. On May 2, 2018, Alvin and Anna signed and filed a "Joint Motion And Consent To Trial And Divorce On The Ground Of Irreconcilable Differences," as required by Mississippi Code Annotated section 93-5-3(3). In it, the parties consented to allow the chancery court to decide, among other things, "[w]hether Alvin Johnson owe[d] past due amounts under the temporary order for [their daughter's] educational costs and the amount." The chancery court entered an order, which was signed on May 3, 2018, and stamped "filed" on May 8, 2018, granting the parties' joint motion and consent agreement.

¶22. Although the parties signed the consent agreement and the court entered it, the record shows that the parties continued to negotiate the terms of their irreconcilable-differences divorce. On the same day the chancery court granted the parties' joint motion and consent agreement, which was also the first day of trial, the chancery court noted as a preliminary matter that Alvin and Anna had come to an agreement concerning two issues in their consent agreement. The trial transcript provides as follows:

> [Anna]: [T]he Court will find the order with the issues that we submitted for consideration in the areas of consent, we have two other areas that we've reached an agreement on.

9

| | |
|---|---|
| THE COURT: | Okay. |
| [Anna]: | One is with respect to the values of two properties that are subject to litigation[,] . . . the [marital home]. We have agreed to stipulate to the value of that property at $130,000. |
| THE COURT: | Okay. |
| [Anna]: | With respect to the issue regarding any sums that [Alvin] may owe as it relates to [their daughter's] education costs, we have agreed and will stipulate that he will pay $20,000. |
| [Alvin]: | That's correct, Your honor. |
| THE COURT: | All right. And that's for her education at Jackson State University? |
| [Anna]: | That's correct. |
| [Alvin]: | Yes, ma'am. |

¶23.    On July 9, 2018, the chancery court entered its order granting a divorce on the ground of irreconcilable differences and deciding the issues consented to by the parties. As to the educational costs, the court found that "[t]he parties [had] stipulated to Alvin's payment of $20,000 toward [their daughter's] educational costs." That order was later amended in a subsequent order, which, as discussed above, the chancery court entered on September 28, 2018. In the amended order, the court found:

> The parties stipulated to Alvin's payment of $20,000.00 toward [their daughter's] educational costs. Alvin shall pay this $20,000 in one lump sum directly to the student loan company where [their daughter] is the sole borrower within ninety (90) days of entry of this amended judgment so that no additional interest accrues.

¶24.    Alvin now argues that the chancery court erred by permitting the parties "to orally

10

amend their written consent agreement at trial." In support, Alvin cites to *Cook v. Cook*, 725 So. 2d 205 (Miss. 1998). In that case, the parties filed a joint motion requesting a divorce on the ground of irreconcilable differences and submitted various issues to the court for its determination. *Id.* at 205 (¶1). On the same day, the parties made an ore tenus motion to modify that agreement, which ultimately settled all of the issues enumerated in their joint motion except for one issue. *Id.* The chancery court granted the parties' joint motion and made its ruling on the only remaining issue. *Id.* On appeal, our supreme court reversed the chancellor's judgment, finding that the parties had failed to provide a written consent agreement as statutorily required under Mississippi Code Annotated section 93-5-2(3). *Id.* at 206 (¶¶7-8).

¶25. But unlike *Cook*, the parties in the present case fully complied with the requirements of subsection 93-5-2(3). The parties' written consent agreement was (1) made in writing, (2) signed by both parties, and (3) consented to by both parties, and it voluntarily permitted the chancery court to resolve specific issues. The educational-costs stipulation, which was made by the parties before trial, was taken into consideration by the chancery court (as permitted by the written consent agreement) and subsequently granted by the court. Therefore, after reviewing the record and applicable law, we cannot say the chancery court erred or "deviated" from the parties' written consent agreement because the chancellor was acting within her authority to resolve the dispute. We also cannot say that Alvin's substantive rights were violated because the record clearly shows that, at the time of trial, the parties were in mutual agreement that Alvin should pay $20,000 as a lump-sum amount for their daughter's

11

educational costs. *See Cobb v. Cobb*, 29 So. 3d 145, 152 (¶25) (Miss. Ct. App. 2010).

### III. Alimony

¶26. Alvin argues the chancellor committed reversible error by awarding Anna lump-sum alimony from his bank accounts. In opposition, Anna contends the court applied the appropriate legal standard. The court's amended order required Alvin to pay Anna $89,455.00 (re-calculated by this Court at $89,455.09) "as a division of marital assets."

¶27. "Alimony should be considered only if, after the parties assets are equitably divided, there are not 'sufficient assets to provide for both parties' and one party is left with a 'deficit.'" *Stroh v. Stroh*, 221 So. 3d 399, 412 (¶43) (Miss. Ct. App. 2017) (quoting *Carter v. Carter*, 98 So. 3d 1109, 1112 (¶8) (Miss. Ct. App. 2012)). "When 'lump-sum alimony is awarded as a mechanism to equitably divide the marital assets, then chancellors may conduct their analysis under the *Ferguson* factors.'" *Lewis v. Pagel*, 172 So. 3d 162, 176 (¶29) (Miss. 2015) (quoting *Davenport v. Davenport*, 156 So. 3d 231, 241 (¶34) (Miss. 2014)).

¶28. Here, and as foreshadowed in the first issue discussed above, the chancery court failed to provide this Court with its basis for awarding lump-sum alimony to Anna, as required by the *Ferguson* guidelines, *supra.* For this reason, we reverse and remand this matter for further proceedings consistent with this opinion.

¶29. Furthermore, we note that in *Lauro v. Lauro*, 847 So. 2d 843, 850 (¶17) (Miss. 2003), our supreme court determined that because the case was remanded for further consideration of equitable division, the chancellor should be instructed "to revisit the awards of alimony . . . after he has properly classified the divided marital assets." Thus, because the chancellor

12

failed to properly adhere to *Ferguson*, and because we have reversed this case and remanded it for further consideration regarding equitable distribution, we also instruct the chancellor to revisit the lump-sum alimony awarded to Anna from Alvin's bank accounts.

## CONCLUSION

¶30. Although we affirm the chancery court's ruling as to the second issue, we reverse the judgment and remand regarding the first and third issues so that the chancellor may explain the bases for the court's decisions as required by *Ferguson*.

¶31. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., WESTBROOKS, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. McDONALD, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**