CARLTON, J.,
 

 for the Court.
 

 ¶ 1. On November 5, 2007, the Chancery Court of Lincoln County entered a judgment granting a divorce to April McCullough (April) and Shane Allen McCullough (Shane) and giving Shane custody of the couple’s two minor children. April was granted liberal visitation and was ordered to pay child support in the amount of $604 per month. Aggrieved, April appeals the chancery court’s judgment. Finding no abuse of discretion by the chancellor, we affirm.
 

 FACTS
 

 ¶ 2. April and Shane were married on June 23, 2001. The marriage produced two daughters: Lindsey and Caitlin, who were five years old and three years old, respectively, at the time of the divorce. The couple lived in Gautier, Mississippi, and then in Ruth, Mississippi. Shane worked at Avondale Shipyard in New Orleans, Louisiana where he stayed during the week. April would visit Shane in New Orleans occasionally, but she typically stayed in Ruth at the couple’s home.
 

 ¶ 3. The couple’s oldest child, Lindsey, was born on November 1, 2002. Shortly after Lindsey’s birth, Shane took a job working as an engineer with Carnival Cruise Lines, which required him to relocate to Italy on April 12, 2003. On May 8, 2003, April and Lindsey joined Shane in Italy. The family made several trips back to Mississippi, with April and Lindsey taking at least one trip to visit April’s family in Canada. Testimony revealed that April and Lindsey would travel to Mississippi from Italy while Shane was traveling for work. Shane would meet them in Mississippi, and the family would then spend time in Mississippi together before going back to Italy.
 

 ¶4. On July 31, 2004, Shane and April returned to Mississippi. April was pregnant with Caitlin at that time. Because April was a Canadian citizen and the family had no health insurance, the couple decided that April should go to Canada to give birth to Caitlin. April traveled to Canada to stay with her mother and to await Caitlin’s birth. Caitlin was born on October 29, 2004. Shane left Canada about one week after Caitlin’s birth to return to work in Italy.
 

 ¶ 5. After Christmas 2004, Shane, April, and the children returned to Italy. The family lived in Italy and traveled to Mississippi over the next year. April and the children returned to Mississippi in October 2005. Shane joined them on December 23, 2005. On January 7, 2006, the couple separated. Shane returned to Italy to complete his contractual obligations for work, and April remained in Ruth.
 

 ¶ 6. April filed for divorce on March 27, 2006. Meanwhile, Shane completed his work in Italy and returned to the United States. Shane took a job with Sperry Marine, which required him to work for several months in Charlottesville, Virginia before being transferred to Ocean Springs, Mississippi in October 2006. Shane’s contract with his employer included a flight to Mississippi every three weeks to visit with his daughters. He visited with them regularly while living in Virginia.
 

 ¶ 7. On October 20, 2006, April rented a car and drove with the children to Maine to set up residence for herself and the children. On October 26, 2006, Shane returned to Ruth from Virginia. On October 27, he filed his counterclaim seeking custody of the children and a temporary re
 
 *376
 
 straining order requiring the immediate return of the children.
 

 ¶ 8. On November 2, 2006, a hearing was conducted regarding Shane’s temporary restraining order. April did not appear at the hearing, but she was represented by her attorney. The chancellor entered an order on November 3, 2006, ordering April to return the children to Lincoln County, Mississippi, immediately. The order gave Shane temporary legal and physical custody of the children.
 

 ¶ 9. April was notified of the chancellor’s decision on November 2, 2006. She filed a complaint for protection from abuse in Maine. She sought custody of the children and a restraining order against Shane. April did not leave Maine until November 22nd to return the children to Mississippi. Shane had to drive to Jackson to pick up the children from a hotel.
 

 ¶ 10. The McCulloughs’ divorce and custody trial commenced on August 27, 2007, and lasted for six days. The chancellor entered his final order of divorce on November 19, 2007, granting physical and legal custody of the children to Shane. April was granted visitation and ordered to pay $604 per month in child support to Shane. Further, she was ordered to pay the medical bills incurred for the children that were not covered by insurance.
 

 ¶ 11. On appeal, April asserts the following assignments of error:
 

 I. Whether the chancellor committed manifest error by allowing into evidence depositions on written questions and substantially relying on the same to render his opinion to award physical and legal custody to Shane.
 

 II. Whether the chancellor erroneously considered the guardian ad litem’s final report, which was not submitted until the final day of trial, thereby depriving April of an opportunity to challenge the guardian ad litem’s findings and recommendations.
 

 III. Whether the chancellor erred in his application of the
 
 Albright
 
 factors and abused his discretion in awarding sole physical and legal custody to Shane.
 

 IV. Alternatively, whether the chancellor erred by failing to award the parties joint legal custody of the children.
 

 V. Whether the chancellor erred in requiring April to be solely responsible for all medical expenses not covered by health insurance.
 

 ¶ 12. We find no error and affirm the judgment of the chancery court.
 

 STANDARD OF REVIEW
 

 ¶ 13. Our standard of review in child custody disputes is well settled. “A chancellor’s findings of fact will not be disturbed unless manifestly wrong or clearly erroneous. This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his [or her] discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.”
 
 Sanderson v. Sanderson,
 
 824 So.2d 623, 625-26(¶ 8) (Miss.2002) (citations omitted). Furthermore, this Court “will affirm the [child custody] decree if the record shows any ground upon which the decision may be justified.... We will not arbitrarily substitute our judgment for that of the chancellor who is in the best position to evaluate all factors relating to the best interests of the child.”
 
 Mosley v. Mosley,
 
 784 So.2d 901, 905-06(¶ 15) (Miss.2001) (quoting
 
 Yates v. Yates,
 
 284 So.2d 46, 47 (Miss.1973)). “However, where the chancellor improperly considers and applies the
 
 Albright
 

 [1]
 

 factors, an appellate court is
 
 *377
 
 obliged to find the chancellor in error.”
 
 Hollon v. Hollon,
 
 784 So.2d 943, 946(¶ 11) (Miss.2001) (footnote added).
 

 DISCUSSION
 

 I. Whether the chancellor erred by allowing depositions on written questions into evidence and relying on them to render his opinion.
 

 ¶ 14. April’s first assignment of error centers around depositions -on written questions propounded to five witnesses who live out of the country. Regarding these depositions, April argues that: (1) Shane failed to provide her with adequate notice of the depositions, depriving her of the opportunity to cross-examine the witnesses or object to the form of the questions; (2) the written deposition questions were not properly certified pursuant to Mississippi Rule of Civil Procedure 30(f)(1); (3) the chancellor relied on the deposition testimony in making his custody determination, despite the highly objectionable form of the questions; and (4) the guardian ad litem improperly relied on the deposition testimony in forming her opinion.
 

 ¶ 15. Mississippi Rule of Civil Procedure 31(a) provides the following guidelines regarding the taking of depositions on written questions:
 

 (a)
 
 Serving questions; notice.
 
 After commencement of the action, any party may take the testimony of any person, including a party, by deposition upon written questions. The attendance of witnesses may be compelled by the use of subpoena as provided by law. The deposition of a person confined in prison may be taken only by leave of court on such terms as the court prescribes.
 

 A party desiring to take a deposition upon written questions shall serve them upon every other party with a notice stating (1) the name and address of the person who is to answer them, if known, and if the name is not known, a general description sufficient to identify him or the particular class or group to which he belongs, and (2) the name or descriptive title and address of the officer before whom the deposition is to be taken. A deposition upon written questions may be taken of a public or private corporation or a partnership or association or governmental agency in accordance with Rule 30(b)(6). Within thirty days after the notice and written questions are served, a party may serve cross questions upon all other parties. Within ten days after being served with cross questions, a party may serve redirect questions upon all other parties.
 

 Within ten days after being served with redirect questions, a party may serve recross questions upon all other parties. The court may for cause shown enlarge or shorten the time.
 

 ¶ 16. Shane served April with his first notices of depositions on written questions on February 20, 2007. Shane served April with amended notices on March 19, 2007. The amended notices identified the designated depositing officer for each of the depositions to be taken. The first deposition was actually taken on February 27, 2007, prior to April receiving the amended notices. Therefore, April contends Shane failed to comply with Rule 31(a), depriving her of an opportunity to cross-examine the deponents or to object to the questions. April filed a motion in limine to have the depositions on written questions excluded from evidence in the divorce trial. The chancellor, after hearing arguments the day of the trial, denied April’s motion and allowed the depositions into evidence.
 

 ¶ 17. The supreme court has held that “[t]he admission of evidence is within the discretion of the chancellor, and rever
 
 *378
 
 sal is not warranted unless judicial discretion is abused.”
 
 Sproles v. Sproles,
 
 782 So.2d 742, 749(¶ 29) (Miss.2001) (citing
 
 Smith v. Jones,
 
 654 So.2d 480, 486 (Miss.1995)). The chancellor allowed the depositions on written questions into evidence, finding that Rule 31(a) did not require that direct and cross-examination questions be submitted simultaneously. Furthermore, the chancellor found that April failed to ask the court for any extension of time with regard to the depositions on written questions so that she could submit her own cross-examination questions. Notably, April failed to raise any objections as to the deposition notices until she filed her motion in limine, a period of approximately six months. Rule 32(d)(1) of the Mississippi Rules of Civil Procedure provides that “[a]ll errors and irregularities in the notice for taking a deposition are waived unless written objection is
 
 promptly served
 
 upon the party giving notice.” (Emphasis added). April failed to promptly notify Shane of her objections to his written depositions.
 

 ¶ 18. Furthermore, April failed to make a timely objection to the form of the written deposition questions. Rule 32(d)(3)(C) of the Mississippi Rules of Civil Procedure states the following regarding objections to written deposition questions:
 

 Objections to the form of written questions submitted under Rule 31 are waived unless served in writing upon the party propounding them within the time allowed for serving the succeeding cross or other questions and within five days after service of the last questions authorized.
 

 Likewise, Rule 32(d)(4) requires the following with respect to deposition testimony:
 

 As to Completion and Return of Deposition.
 
 Errors and irregularities in the manner in which the testimony is transcribed or the deposition is prepared, signed, certified, sealed, endorsed, transmitted, filed, or otherwise dealt with by the officer under Rules 30 and 31 are waived unless a motion to suppress the deposition or some part thereof is made with reasonable promptness after such defect is, or with due diligence might have been, ascertained.
 

 ¶ 19. Again, April failed to object to the deposition questions or the certification by the deposing officer with reasonable promptness. Because April waived any objection to the deposition questions, we find no error in the chancellor’s admission of the deposition testimony into evidence.
 

 ¶ 20. April further argues that the chancellor and the guardian ad litem erred in relying on the deposition testimony in forming their opinions with regard to custody of the children. April contends that the deposition questions were highly objectionable as to form, and that the deponents’ responses constituted inadmissible character and opinion evidence. Notwithstanding April’s failure to object to the form of the questions, we find her argument lacks merit. While the chancellor did consider the deposition testimony, the record clearly reflects that he considered other evidence and testimony as well. Furthermore, the guardian ad litem considered the deposition testimony along with information gathered through her own interviews with April’s family members in Maine and Canada, April’s landlord in Canada, a social worker who is familiar with the children, April’s supervisor and neighbors, and others.
 

 ¶ 21. April’s contention that the deposition testimony constituted impermissible character evidence also fails. Mississippi Rule of Evidence 404(a) provides that “[ejvidence of a person’s character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occa
 
 *379
 
 sion.... ” However, the comment to Rule 404 provides an exception to the prohibition against character evidence when character is a direct issue in a case. M.R.E. 404(a) cmt. In a child custody case, the character traits of parents are at issue in the chancellor’s evaluation of the
 
 Albright
 
 factors. A parent’s character traits could be relevant in the
 
 Albright
 
 analysis under any of the factors, including moral fitness of the parents, physical and mental health of the parents, and the stability of the home environment.
 
 See Albright,
 
 437 So.2d at 1005.
 

 ¶ 22. We find no error in the chancellor’s admission of the deposition testimony or in his consideration of the testimony in his
 
 Albright
 
 analysis. This issue is without merit.
 

 II. Whether the chancellor erred in considering the guardian ad li-tem’s report, which was not submitted until the final day of trial, thereby depriving April of an opportunity to challenge the guardian ad litem’s findings and recommendations.
 

 ¶ 23. In her second assignment of error, April urges this Court to find the chancellor in error for admitting the guardian ad litem’s report on the final day of trial. April asserts that she did not have an adequate opportunity prior to the guardian ad litem’s testimony to review the information in the guardian ad litem’s report, including the interviews she conducted, the documents she reviewed, or her findings and recommendations for custody.
 

 ¶24. The chancellor initiated a brief recess in the proceedings so both Shane and April could review the guardian ad litem’s final report before her testimony. April made no objection to the admission of guardian ad litem’s previous reports or to the final report. April made no objection to the admission of the guardian ad litem’s report until she filed her motion for new trial. Furthermore, April made no request for a continuance or for additional time to examine the report.
 

 ¶ 25. The supreme court has held that when a party fails to make a contemporaneous objection at trial, he waives any error on that issue on appeal.
 
 Dorrough v. Wilkes,
 
 817 So.2d 567, 577(¶ 33) (Miss.2002) (citations omitted). Furthermore, “[a]n appellate court is under no obligation to review an assignment of error when an objection was not made or when an objection was untimely.”
 
 Id.
 
 Because April did not raise any objections to the admission of the guardian ad litem’s report or make a request for additional time to review the report, we find that this issue is procedurally barred.
 

 III. Whether the chancellor erred in his application of the
 
 Albright
 
 factors and abused his discretion in awarding sole physical custody to Shane.
 

 ¶ 26. April’s third assignment of error centers around the chancellor’s application and analysis of the
 
 Albright
 
 factors. April contends that the chancellor applied the
 
 Albright
 
 factors unfairly, placing too much weight on certain facts while disregarding others.
 

 ¶ 27. Chancellors must consider a number of factors in determining child custody: (1) age, health, and sex of the child; (2) which parent had continuity of care prior to the separation; (3) which parent has better parenting skills and the willingness and capacity to provide primary childcare; (4) the employment responsibilities of the parents; (5) the physical and mental health and age of the parents; (6) the moral fitness of the parents; (7) the emotional ties of the parents and child; (8) the home, school, and community records of
 
 *380
 
 the child; (9) the preference of a child at the age sufficient to express a preference by law; (10) the stability of the home environment and employment of each parent; and (11) the other relevant factors in the parent-child relationship.
 
 Albright,
 
 437 So.2d at 1005. The chancellor in the present case thoroughly considered each of the above factors.
 

 ¶ 28. April finds manifest error in the chancellor’s findings on the following factors: age, health, and sex; continuity of care; parenting skills; willingness and capacity to provide primary childcare; employment responsibilities; moral fitness; stability of the home environment; and “other factors.” Because April only specifically challenges the chancellor’s findings on these factors, we will not address the chancellor’s analysis of the remaining
 
 Al-bright
 
 factors.
 

 A. Age, Health, and Sex of the Children
 

 ¶ 29. April argues that the chancellor erred by not finding this factor to favor her in his custody determination. April argues that the children, who were ages five and three at the time of the hearing, are of tender years. Thus, April, as the children’s mother, should be favored under this factor.
 

 ¶ 30. The chancellor found this factor to favor neither parent. A child is no longer of tender years when she can be equally cared for by someone other than her mother.
 
 Mercier v. Mercier,
 
 717 So.2d 304, 307(¶ 15) (Miss.1998). Relying on the deposition testimony from the couple’s friends abroad, along with trial testimony, the chancellor determined that the children “are beyond an age that only April can provide for them, and ... Shane has demonstrated that he can provide for their care.... ”
 

 ¶ 31. The chancellor noted that Shane stayed with Caitlin in the hospital when she was only three months old, while April stayed at home with Lindsey, who was also very ill. We note that under this factor, the chancellor’s consideration of the depositions on written questions was limited. The chancellor noted that Shane cared for the children while April went out when the family lived in Italy, and the children were very young at the time. The chancellor stated that this fact was corroborated by the deposition testimony. Furthermore, the chancellor determined that Shane has acted as the children’s primary caretaker since the temporary custody order.
 

 1132. The chancellor found this factor favored neither parent. The children required no special medical care that required them to live with one parent over the other. Further, the chancellor found that because the children were so young, their gender favored neither parent.
 

 ¶ 33. We find support in the record for the chancellor’s determination that the above factors favored neither April nor Shane.
 

 B. Continuity of Care
 

 ¶ 34. April argues that the chancellor erred in not finding this factor to weigh more in her favor. Under this factor, the chancellor stated the following:
 

 The court finds that if this factor favors either party, it would only slightly favor April due to the stay-at-home mom status she maintained for several years during the girls’ lives and by that status had the opportunity during the time she had the children to do more.
 

 In his analysis, the chancellor noted that: Shane bathed the children more often; he cooked for and fed the children as often as April; and he took care of the children while April went out with friends. The cháneellor noted that April dressed the
 
 *381
 
 children more often because she stayed home with them, and that neither parent put the children to bed more often than the other. The chancellor found Shane to be the primary disciplinarian for the children. Further, the chancellor noted that when April had the children with her in Ruth, she relied on Shane’s parents for help -with the children, and that the children stayed with his parents on a regular basis.
 

 ¶35. April argues that the chancellor relied too heavily on the period after April and Shane separated in analyzing the continuity-of-care factor. The chancellor did consider the custody and visitation arrangement in effect after the temporary custody order; however, the record does not indicate that he based his analysis under this factor on the post-separation periods. The chancellor recites the arrangements since the temporary order, noting when April exercised visitation on weekends and holidays. However, the chancellor only noted, after the discussion of the custody arrangement, that Shane “has demonstrated that he has the
 
 ability to provide primary care
 
 ” to the children.
 

 ¶ 36. We find support in the record for the chancellor’s determination that this factor slightly favors April.
 

 C.Parenting Skills
 

 ¶ 37. Under this factor, the chancellor noted that both Shane and April possessed the ability and wherewithal to provide for the children’s physical care, emotional support, discipline, and guidance. However, the chancellor found Shane more attentive to the children’s medical needs. He also found that Shane’s routine with the children helped them deal with the transition to visiting with their mother on weekends and maintaining a relationship with her. The chancellor generally found Shane more emotionally supportive of the children. Additionally, the chancellor found that Shane has a definitive philosophy in disciplining the children, whereas “April has just told me how she does it.”
 

 ¶ 38. The chancellor found this factor to favor Shane. The record supports the chancellor’s finding.
 

 D. Willingness and Capacity
 

 ¶ 39. The chancellor noted that both Shane and April have the willingness and capacity to provide childcare for the children. He noted that both Shane and April have a home, transportation for the children, and childcare. The chancellor found that Shane had a greater support network because his parents were close enough to help. April’s family members live as far away as Maine and Canada, and she failed to call witnesses to attest to their willingness to provide backup childcare for the children.
 

 E. Employment Responsibilities of the Parents
 

 ¶ 40. The chancellor found this factor favored neither Shane nor April. He found that both Shane and April work in professions that allow flexibility to attend to the children’s needs, and that neither party’s employment was overwhelmingly better than the other’s. The chancellor’s findings are supported by the testimony.
 

 F. Moral Fitness
 

 ¶41. The chancellor found the moral fitness factor favored Shane. The chancellor focused on April’s activities when the couple lived in Italy. He noted that, when the family took a cruise, April remained at the bar after Shane and the children went to bed. Further, the chancellor relied on deposition testimony regarding April’s behavior during “girls’ night out” activities with her friends in Italy, including that
 
 *382
 
 April tended to become intoxicated and make advances on other men.
 

 ¶ 42. April contends that the chancellor failed to take into consideration Shane’s prior behavior, including prior citations for driving under the influence. Further, she faults the chancellor for considering her two prior marriages as evidence of her instability. However, as with the other
 
 Albright
 
 factors, this Court cannot reweigh the evidence presented at trial. Evidence exists in the record to support the chancellor’s findings under this factor.
 

 G. Stability of the Home Environment
 

 ¶ 43. The chancellor failed to state which party he favored under this factor. He stated that both Shane and April maintained stable home environments, but he noted that April had been married twice before marrying Shane.
 

 H. Other Factors
 

 ¶ 44. Under this factor, the chancellor considered Shane’s family connections in Mississippi and April’s lack of family connections. Further, the chancellor stated that he found Shane’s testimony regarding the couple’s separation more credible than April’s testimony. He found April’s testimony inconsistent in several instances, including testimony regarding Shane’s relationship and involvement with the children. The chancellor found April’s testimony intentionally deceptive in order to portray Shane negatively.
 

 ¶ 45. In her argument, April attempts to relitigate the issue of the best interests of the children and the chancellor’s findings under the
 
 Albright
 
 factors. This Court has held that “we may not substitute our judgment for the chancellor’s[,] but must determine if the chancellor’s ruling is supported by substantial evidence.”
 
 Norman v. Norman,
 
 962 So.2d 718, 721 (¶ 10) (Miss.Ct.App.2007) (citing
 
 Brewer v. Brewer,
 
 919 So.2d 135, 141(¶ 23) (Miss.Ct.App.2005)). Further, “[s]o long as there is substantial evidence in the record that, if found credible by the chancellor, would provide support for the chancellor’s decision, this Court may not intercede simply to substitute our collective opinion for that of the chancellor.”
 
 Id.
 
 (citing
 
 Bower v. Bower,
 
 758 So.2d 405, 412(¶ 33) (Miss.2000)). We find substantial evidence to support the chancellor’s findings under the
 
 Albright
 
 factors. Accordingly, this issue lacks merit.
 

 IV. Whether the court erred by failing to award the parties joint legal custody of the children.
 

 ¶ 46. April argues that the chancellor erred by not awarding joint legal custody of the children to April and Shane, despite the guardian ad litem’s recommendation that joint custody be awarded. The parties withdrew their fault-based complaints for divorce prior to trial and agreed to an irreconcilable differences divorce. April and Shane agreed to submit the issues of custody and child support to the chancellor for his determination. While neither Shane nor April specifically requested joint custody, their submission of the issue of custody to the chancellor opened the door for the chancellor to award joint custody if he found it to be in the best interests of the children.
 
 See
 
 Miss.Code Ann. § 93-5-24(2) (Rev.2004) (“Joint custody may be awarded where irreconcilable differences is the ground for divorce, in the discretion of the court, upon application of both parents.”);
 
 see also Crider v. Crider,
 
 904 So.2d 142, 148(¶ 15) (Miss.2005) (holding that “when parties consent in writing to the court’s determination of custody, they are consenting and agreeing to that determination,” satisfying the statutory requirement of a joint application).
 

 
 *383
 
 ¶ 47. Shane’s and April’s consent to allow the chancery court to determine custody gave the chancellor the option to award joint-custody to the parties. Further, the guardian ad litem’s report recommended a joint custody arrangement. The chancellor rejected the guardian ad litem’s recommendation of joint custody, without explanation, and granted legal and physical custody of the children to Shane. However, chancellors are not required to defer to the findings of a guardian ad litem.
 
 Passmore v. Passmore,
 
 820 So.2d 747, 751(¶ 13) (Miss.Ct.App.2002). Furthermore, in cases where the appointment of a guardian ad litem is discretionary, or not required by statute, the chancellor is not bound to explain his decision to reject the guardian ad litem’s recommendations.
 
 Id.
 

 ¶ 48. The chancellor thoroughly discussed his analysis of the
 
 Albright
 
 factors in reaching his custody decision. We find ample evidence in the record to support the chancellor’s findings under the
 
 Al-bright
 
 analysis. This issue is without merit.
 

 V. Whether the chancellor erred in requiring April to be responsible for all medical expenses not covered by insurance.
 

 ¶ 49. In her final assignment of error, April argues that the chancellor erred in requiring that she pay all medical expenses incurred for the children not covered by their insurance. The chancellor ordered Shane to maintain the children on the group insurance through his employer and to pay the premiums. April contends the chancellor erred in requiring her to be responsible for 100% of the medical expenses not covered by insurance, rather than splitting the expense equally between her and Shane. She cites
 
 Hoar v. Hoar,
 
 404 So.2d 1032, 1036 (Miss.1981) to support her argument.
 

 ¶ 50. In
 
 Hoar,
 
 the supreme court upheld a chancellor’s child support decree requiring a divorcing couple to each pay half of the children’s medical expenses not covered by insurance.
 
 Id.
 
 In that case, however, the non-custodial parent also bore the responsibility of maintaining health insurance for the children and for the custodial parent.
 
 Id.
 
 In the case before this Court, however, the chancellor gave Shane, the custodial parent, the task of covering the children on his group insurance because the chancellor determined the insurance plan to be superior to the insurance available to April. Furthermore, the
 
 Hoar
 
 case does not limit the chancellor to splitting medical expenses equally between the parties. The supreme court merely upheld a chancellor’s ruling that the expenses should be divided.
 
 Id.
 
 Therefore, this issue is without merit.
 

 ¶ 51. In conclusion, we find no abuse of discretion by the chancellor with respect to April’s assignments of error. We, therefore, affirm the chancery court’s judgment.
 

 ¶ 52. THE JUDGMENT OF THE LINCOLN COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 .
 
 Albright v. Albright,
 
 437 So.2d 1003, 1005 (Miss.1983).