# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01475-COA

**TRACEY CAROL GADDIS**                                                    **APPELLANT**

**v.**

**BENNIE RICHARD WILKERSON, JR.**                                 **APPELLEE**

DATE OF JUDGMENT:                10/06/2016
TRIAL JUDGE:                      HON. J. LARRY BUFFINGTON
COURT FROM WHICH APPEALED:  SCOTT COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:      WILSON H. CARROLL
ATTORNEY FOR APPELLEE:        JAMES F. NOBLE III
NATURE OF THE CASE:          CIVIL - DOMESTIC RELATIONS
DISPOSITION:                    AFFIRMED: 01/09/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE LEE, C.J., FAIR AND GREENLEE, JJ.

### FAIR, J., FOR THE COURT:

¶1.     This appeal involves the narrow issue of custody-schedule modification. Richard Wilkerson originally sought to remove custody of his son from his ex-wife, Tracey Gaddis, but the chancellor increased his custody time instead. Tracey appealed. After careful review, we find the chancellor's decision was supported by substantial evidence. Accordingly, we affirm.

## FACTS

¶2.     Richard and Tracey married in 2002. They had one child together – Logan[1] – born in 2005. The parties divorced in 2008 on the ground of irreconcilable differences. In the

---

[1] We use a fictitious name for the minor to protect his identity.

child custody and property settlement agreement, Richard and Tracey were granted joint legal and physical custody of their son, with detailed periods of custody. The chancellor granted Tracey custody during the weekdays, except for Tuesday from 3 p.m. to 8 p.m, when Logan would be with Richard. The agreement also stated that Richard would have Logan every other weekend and at the opening of deer season, beginning at age five. Finally, the agreement divided holidays and special occasions between the parties.

¶3. In 2013, Richard and Tracey entered into their most recent agreement amending their preceding child custody and property settlement agreements, all of which have consistently affirmed that their custody is both joint legal and joint physical. The modified agreement granted Richard and Tracey equal time with Logan during the summer on a week-on, week-off basis. The agreement further stated that Richard would have Logan every other Wednesday from 5:30-7:30 p.m. (for church services and related activities) and every first, third, and fifth weekend, from Thursday after school until the following Monday. And the agreement provided additional details to Richard and Tracey's holiday and special occasion schedules.

¶4. On April 6, 2016, Richard filed a petition to modify the amended child custody and property settlement agreement. Richard sought sole physical custody, claiming a material change in circumstances had occurred that adversely affected Logan. In the alternative, he sought equal time with Logan on a year-round basis during the school year. Tracey filed a motion to dismiss, which the court denied.

¶5. The court held a hearing on Richard's petition. Both Richard and Tracey testified, and Logan was interviewed in the chancellor's chambers – off the record but with the court reporter present. At the conclusion of the hearing, the chancellor determined that there was no material change in circumstances warranting a change of custody. So he denied Richard's request for sole physical custody. He also denied Richard's alternative request for equal time during the school year. However, the chancellor found modification of the custodial periods was in the best interest of the child, noting that the custodial periods were "in the nature of a visitation schedule." He changed Richard's alternating Wednesday evening custodial periods, provided to end at 8 p.m., to overnight. He also directed that spring break would be divided, with alternating four and three day periods for each of the parents. The chancellor also found that Tracey should be allowed to see Logan on his birthday, if the birthday falls within Richard's custodial period.

## STANDARD OF REVIEW

¶6. Our review of domestic relations matters is limited. *Chesney v. Chesney*, 849 So. 2d 860, 862 (¶8) (Miss. 2002) (citing *Montgomery v. Montgomery*, 759 So. 2d 1238, 1240 (¶5) (Miss. 2000)). The chancellor's findings of fact will not be disturbed on appeal if they are supported by substantial credible evidence. *Carter v. Carter*, 204 So. 3d 747, 756 (¶37) (Miss. 2016) (citing *Marascalco v. Marascalco*, 445 So. 2d 1380, 1382 (Miss. 1984)). We will not reverse the decision of a chancery court unless the chancellor abused his or her discretion, was manifestly in error, or applied an erroneous legal standard. *Dupree v.*

3

*Pafford*, 200 So. 3d 1092, 1094 (¶4) (Miss. Ct. App. 2016) (citing *Pearson v. Pearson*, 121 So. 3d 266, 268 (¶6) (Miss. Ct. App. 2013)).

**DISCUSSION**

¶7.     Richard and Tracey have shared joint legal and physical custody of Logan since the original divorce decree.  Joint physical custody does not require equal time with each parent, but it does require that the parents have "significant periods of physical custody . . . to assure a child of frequent and continuing contact with both parents."  Miss. Code Ann. § 93-5-24(5)(c) (Rev. 2013).

¶8.     Tracey contends that the chancellor erred when he modified the schedule within the custody agreement.  At trial and on appeal, both parties have incorrectly stated that Tracey has primary physical custody of Logan and that Richard has visitation.  The original custody agreement, the 2013 modified custody agreement, and the appealed 2016 modified custody agreement all state that Tracey and Richard are both custodial parents – an important distinction for Richard.  Neither party is categorized as having "primary physical custody," nor is either party awarded visitation.  Further our supreme court has emphasized that the term "primary physical custody" is not specified in section 93-5-24 and "cannot act to transform such express 'joint physical custody' into de facto sole physical custody with liberal visitation."  *Porter v. Porter*, 23 So. 3d 438, 446-47 (¶22) (Miss. 2009).

¶9.     Still, we agree with the chancellor that a custody schedule has the characteristics of a visitation schedule.  To modify a visitation schedule, "it must be shown that the prior

decree for reasonable visitation is not working and that a modification is in the best interest of the child." *H.L.S. v. R.S.R.*, 949 So. 2d 794, 798 (¶9) (Miss. Ct. App. 2006) (quoting *Ellis v. Ellis*, 840 So. 2d 806, 812 (¶25) (Miss. Ct. App. 2003)). "The chancellor has broad discretion to determine the specific times for visitation." *Id.* (citing *Haddon v. Haddon*, 806 So. 2d 1017, 1020 (¶12) (Miss. 2000)).

¶10. In his bench ruling, the chancellor noted that he took all testimony and other evidence into consideration. The chancellor first extended Richard's alternating Wednesdays to overnight stays. On those Wednesday nights, Richard takes Logan to church. The chancellor reasoned that overnight stays are more beneficial since, after the church service, "all the child's doing is coming home and going to bed. I mean, he doesn't have time to do anything else, so there's no reason to make an exchange at 8:00 at night or 8:30 . . . ." He further reasoned that overnight stays would result in less hostility between Richard and Tracey, since they often argued about whether Richard brought Logan back to Tracey's house on time. The chancellor also granted Richard custody during half of Logan's spring break. He noted that spring break was the only holiday missing from the past two agreements.

¶11. We find the chancellor's minor changes to the custody schedule supported by the record. Further, the chancellor's decision to award Richard half of Logan's spring break served the purpose of joint custody – to award each custodial parent equal and "significant periods of physical custody." Miss. Code Ann. § 93-5-24 (Rev. 2013).

¶12. We also address Richard's argument on appeal that the chancellor's judgment is not

a final, appealable judgment under Mississippi Rule of Civil Procedure 54(b). Generally, a final judgment is one that adjudicates the merits of the controversy and settles all issues between all parties. *Miss. Waste of Hancock Cty. Inc. v Bd. of Sup'rs of Hancock Cty.*, 818 So. 2d 326, 330 (¶8) (Miss. 2001) (citing *Sanford v. Bd. of Sup'rs, Covington Cty.*, 421 So. 2d 488, 491 (Miss. 1982)). In other words, "[a]n order is considered final if it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Banks v. City Fin. Co.*, 825 So. 2d 642, 645 (¶10) (Miss. 2002) (citing *Catlin v. United States*, 324 U.S. 229, 233 (1945)), *overruled on other grounds by Sawyers v. Herrin-Gear Chevrolet Co.*, 26 So. 3d 1026 (Miss. 2010). Here, because the chancellor adjudicated the merits of Richard's petition and settled all issues between Richard and Tracey, we find the appealed judgment is indeed a final judgment.

¶13. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**