# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00961-COA

STEPHANIE SCOTT                                                              APPELLANT

v.

NICHOLAS BOUDREAU                                                            APPELLEE

DATE OF JUDGMENT:              08/22/2022
TRIAL JUDGE:                   HON. JENNIFER T. SCHLOEGEL
COURT FROM WHICH APPEALED:     HARRISON COUNTY CHANCERY COURT,
                               SECOND JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:        DAVID ALAN PUMFORD
ATTORNEY FOR APPELLEE:         NICHOLAS BOUDREAU (PRO SE)
NATURE OF THE CASE:            CIVIL - CUSTODY
DISPOSITION:                   AFFIRMED - 11/28/2023
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., McCARTY AND SMITH, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.     After Nicholas and Stephanie divorced in Maryland, she enrolled the foreign judgment in Mississippi.  Nicholas later filed for a modification after choosing to relocate to Colorado. The chancellor modified the custody schedule, granting Nicholas custody of the children.

¶2.     Stephanie appeals, arguing that the chancery court erroneously granted Nicholas physical custody of the children, improperly analyzed the *Albright* factors, incorrectly awarded Nicholas child support, did not hold him to the same standard as a represented litigant, and interpreted the children's therapy notes incorrectly.

¶3.     Finding these decisions were within its discretion and supported by substantial evidence, we affirm the chancery court's judgment.

## BACKGROUND

¶4. Stephanie Scott and Nicholas Boudreau wed in Maryland in 2013 and had two children, Brittany in 2013, and Bobby in 2015.[1] Both parents were active-duty service members in the United States Air Force.

¶5. In 2017, Stephanie was stationed in South Korea for one year. During her tour, the children lived with Nicholas in Maryland. That same year, Nicholas also secured a position at Keesler Air Force Base in Biloxi for a four-year commitment through March 2022. He was later given the choice of completing a three-year commitment with the fourth year being optional.

¶6. In March 2019, the couple divorced in a Circuit Court in the State of Maryland. Each was awarded joint legal and joint physical custody. Soon after, in May 2019, both parents moved to Mississippi. Stephanie first had the Maryland divorce judgment enrolled in Mississippi, then requested modification of the joint physical custody arrangement. She asked the chancery court to award her primary physical custody of the children subject to Nicholas's visitation.

¶7. Finding "on its face, this complaint fails to establish a material change adverse to the child or one that would render their current shared custody schedule unworkable so as to trigger modification," the chancery court denied Stephanie's petition. However, it did modify the custodial schedule "to a 5-2-2-5 schedule, giving Nicholas custody Monday through Wednesday of every week and every other weekend, and Stephanie custody

---

[1] We use pseudonyms to protect the privacy of the minor children.

Wednesday through Friday and every other weekend."

¶8.     Stephanie remarried in 2020 and Nicholas remarried in 2021. In 2022, Nicholas filed a petition for modification of custody. He had been accepted into the United States Space Force and expected to relocate to Colorado. While she sought to dismiss Nicholas's claim, Stephanie agreed custody should be modified based on the material change of his relocation.

¶9.     During the trial, the chancellor heard testimony about how present the two sets of parents were in the lives of the children. Nicholas and his wife attended all practices, games, and events of the children's sports and other extracurricular activities, except dance. Whereas Stephanie was the primary parent who took Brittany to dance class. But in general Stephanie did not attend sports practices during Nicholas's custodial time, nor had she attended all of the games. Notably, Nicholas's wife testified she had attended "so many practices and games that they ran together so she wasn't sure if Stephanie was missing games or practices or both." In contrast, Stephanie's husband did not regularly attend with Stephanie.

¶10.    Bobby also attends therapy for "adjustment disorder with depressed mood." Nicholas's wife attends therapy sessions and practices coping skills learned in therapy with him. Both parents would go with him—and while his stepmother was always there, his stepfather rarely was.

¶11.    After the trial, the chancellor found it was "not in the best interests of the children to modify joint physical custody or joint legal custody[.]" Nonetheless, the trial court considered "it . . . necessary to *modify the custody schedule* due to the relocation" of

3

Nicholas. The court further found it was "in the best interests of the children to reside with Nicholas . . . for the majority of the time and for Stephanie . . . to exercise her custody of the children primarily during the summers and holidays as the schedule of the children allows." Nicholas was also granted "tie-breaking authority" if "the parties cannot agree on major life decisions of the children." Further, the chancellor stated that if Stephanie ever moved closer to the children, "she may petition the [c]ourt for a modification of the custody schedule again to grant her more parenting time."

¶12. Stephanie now appeals.

## STANDARD OF REVIEW

¶13. "The standard of review in child custody cases is limited. Reversal occurs only if a chancellor is manifestly wrong or applied an erroneous legal standard." *Butler v. Mozingo*, 287 So. 3d 980, 983 (¶10) (Miss. Ct. App. 2019). "So long as there is substantial evidence in the record that, if found credible by the chancellor, would provide support for the chancellor's decision, this Court may not intercede simply to substitute our collective opinion for that of the chancellor." *Id*.

## DISCUSSION

### I.     The chancery court did not err by ordering the relocation of the children.

¶14. Stephanie argues the trial court should not have ordered the children's relocation to their father's home in Colorado. Specifically, she alleges "the chancery court abused its discretion in failing to consider uprooting the children," and further "fail[ed] to consider the impact of such a move" in her life.

4

¶15. "Generally, the mere moving of the custodial parent does not constitute a material change in circumstances for child custody modification purposes." *Id*. at (¶12) (internal quotation marks omitted). "But it is the effect the move has on the child and the custody arrangement that is dispositive." *Id*. "This Court has found even a short move can result in a material change in circumstances where the move causes the custody agreement to become impractical." *Munday v. McLendon*, 287 So. 3d 303, 310 (¶29) (Miss. Ct. App. 2019).

¶16. "[A] custody schedule has the characteristics of a visitation schedule," and "[t]o modify a visitation schedule, 'it must be shown that the prior decree for reasonable visitation is not working and that a modification is in the best interest of the child.'" *Gaddis v. Wilkerson*, 235 So. 3d 1446, 1449 (¶9) (Miss. Ct. App. 2018) (quoting *Ellis v. Ellis*, 840 So. 2d 806, 812 (¶25) (Miss. Ct. App. 2003)). "[A]s in all matters relating to a minor child, the primary consideration [with a visitation schedule] is the best interest of the child[,] . . . start[ing] from the presumption that where possible, that best interest is served by maintaining a viable relationship with both parents." *Strange v. Strange*, 43 So. 3d 1169, 1173 (¶14) (Miss. Ct. App. 2010).

¶17. It is first important to emphasize a fact found by the trial court, which provided a lens through which the relocation was viewed: "These parents are both good parents and do not seem to have a discernible problem with parenting skills." Both parents are also longtime members of the military and have served and continue to serve our country—and the realities of their military service mean their families have been repeatedly uprooted by tours of duty and assignments to different bases. As the trial court put it, "Both of them are accustomed

5

to a lifestyle of relocating."

¶18.    This background was also supported by the proof at trial.  The trial court explained how Nicholas's current wife "testified that Nick applied to the newly created Space Force along with almost everyone else they knew."  One of the reasons was that he believed he "will not be moving from Colorado as long as he is an active member of the Space Force, which will be, according to his testimony, a minimum of eight . . . years, if not longer." Further, "Nick plans to stay active duty at least 20 years, if not more, before retirement . . . [and] will not be deployed or transferred to a new base as a member of the Space Force, so he would not be required to move."  Accordingly, the trial court granted Nicholas physical custody with the expectation that the otherwise unpredictable circumstances of military life would be more settled after this relocation to Colorado.

¶19.    Stephanie protests this finding on appeal, arguing the move to Colorado would be disruptive for the children and was not in their best interests.  But this misses the mark, as the trial court was fashioning a remedy that would hopefully ensure more long-term stability for the children given Nicholas's more settled expectations he would not be relocating again as a part of his military service.  Stephanie points out that she was finished with her military service and it was "absolutely her settled purpose to remain in Mississippi," but the trial court acknowledged she had moved twice after leaving the service and worked at two different schools.

¶20.    In the end, the trial court heard all this evidence and—while pointing out that both mother and father were "good parents"—found it was in the best interests of the children that

6

they relocate with their father to Colorado. Given the deferential standard of review on appeal and the trial court's thorough and well-detailed order, this issue is without merit.

## II. The chancery court did not err in its *Albright* analysis.

¶21. For her second issue, Stephanie challenges the chancery court's *Albright* analysis and application of its factors to the facts of this case.

¶22. "The Mississippi Supreme Court has established that the best interest of the child is paramount in any child-custody case." *Garner v. Garner*, 343 So. 3d 1097, 1106 (¶53) (Miss. Ct. App. 2022). To determine what is in the child's best interest, the trial court considers the following factors:

> (1) age, sex and health of the child; (2) which parent had the "continuity of care prior to the separation;" (3) parenting skills; (4) each parent's "willingness and capacity to provide primary child care;" (5) the parent's employment and its associated responsibilities; (6) physical and mental health and age of the parents; (7) "emotional ties of parent and child;" (8) "moral fitness of parents;" (9) the child's "home, school, and community record;" (10) "preference of the child at the age sufficient to express a preference by law;" (11) "the stability of the home environment and employment of each parent;" and (12) any other "factors relevant to the parent-child relationship."

*Hackler v. Hackler*, 296 So. 3d 773, 777 (¶19) (Miss. Ct. App. 2020) (quoting *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983)).

¶23. "[T]he chancellor is required to address each of the *Albright* factors that is applicable to the case." *Garner*, 343 So. 3d at 1107 (¶54). "However, the chancellor need not decide that every factor favors one parent over the other." *Id*. "Instead, the *Albright* factors exist to ensure the chancellor considers all the relevant facts before he reaches a decision." *Id*. "All the factors are important, but the chancellor has the ultimate discretion to weigh the

7

evidence the way he sees fit in determining where the child's best interest lies." *Id.*

¶24. Specifically, Stephanie argues that the chancery court abused its discretion in making findings of fact and conclusions of law that were either speculative or inconsistent with the testimony and evidence provided at trial. While Stephanie did not deeply develop these arguments, we address each challenged *Albright* factor in turn.

### a. Parenting Skills

¶25. The chancery court found that the "parenting skills" factor favored Nicholas because he and his current wife "are more involved with the children and more vigilant" than Stephanie and her husband. Stephanie further argues she rebutted arguments raised by Nicholas concerning inappropriate behaviors, appearance, and personal hygiene of the children.

¶26. As set out above, the chancellor found Stephanie and Nicholas "are both good parents and do not seem to have a discernable problem with parenting skills." Nonetheless, "[a]s a couple Nick and [his current wife] are more involved with the children and more vigilant than Stephanie and [her current husband]." Furthermore, the trial court emphasized, "Stephanie specifically stated to the therapist and to them that she does not want to co-parent but rather parallel parent." Further, when required to attend a parenting class, Nicholas and his wife attended weeks of parenting and marriage classes through their church, whereas Stephanie merely attended a four-hour online parenting course.

¶27. Given this proof, we cannot say that the chancery court erred by finding that this factor weighed slightly more in favor of Nicholas.

### b.     Moral Fitness

¶28.    While neither parent specifically alleged that the other was morally unfit, the chancellor found that the "moral fitness" factor "[s]lightly favors Nick more" than Stephanie.

¶29.    The proof at trial was that Stephanie and her mother had a "falling out" and did not speak for approximately seven months. During this time, Stephanie's mother spoke to the grandchildren on FaceTime, but did not spend time with them in person. Notably, Stephanie's mother testified that because she and her daughter previously often spoke a few times a day, this separation was "particularly painful." During this same time period Nicholas gave up his week of spring break with the children so that they could spend time with their grandmother. For these reasons, the chancellor found that Nicholas's "willingness to give up his time with the children to promote family unity" showed greater moral fitness.

¶30.    While reasonable minds might differ on this point, given this proof we cannot say that the chancery court erred by finding that this factor weighed slightly more in favor of Nicholas.

### c.     Stability of the Home Environment

¶31.    The trial court found this factor favored Nicholas because "the overall testimony from the witnesses indicates that Nick and [his wife] operate more fully as a couple in parenting the children than Stephanie and [her husband]."

¶32.    The proof at trial shows Nicholas is stationed at Buckley Space Force Base. At the base, housing is right next to the school. He has served almost twelve years in the Air Force and plans to stay on active duty for at least twenty years, if not more, before retirement.

9

Nicholas testified he believes he will not be deployed or transferred to a new base. In contrast, since leaving the Air Force Stephanie has moved twice since she left the Keesler Air Force Base and has worked as a teacher at two different schools.

¶33. On appeal Stephanie points out that she and her husband live, work, own a home, and fully intend to remain on the Mississippi Gulf Coast. Her husband testified he has been approved to retire and will leave the Air Force in May 2023 after twenty years of service.

¶34. The trial court found Nicholas, even though remarried, actually has pictures of Stephanie hanging in his home, emphasizing her role in his children's lives. Nicholas and his current wife attended all the children's games and practices. Stephanie's presence was simply not as consistent, except with her daughter's dance practices that she regularly attended. Stephanie's husband showed up even less, with his presence diminishing over time. Nicholas's current wife attends Bobby's therapy sessions and practices his coping skills with him, making sure he follows through with them. Likewise, she is present at all the children's activities and present in the home when they are there. The trial court found Stephanie's new husband is "just not very present in the lives of the children."

¶35. Given the evidence presented at trial, we cannot say that the chancery court erred by finding that this factor weighed more in favor of Nicholas.

### d. Emotional Ties of Parent and Child

¶36. While the chancellor acknowledged that both parents are bonded to the children, the chancellor found that this factor favors Nicholas. He submitted family pictures to show the closeness of the children not only to himself but also to his wife and other family members.

Stephanie did not submit any corroborating evidence to her testimony of her activities with the children.

¶37. While Stephanie argues that there was no credible evidence that there is a greater emotional bond between the children and Nicholas, as opposed to the children and Stephanie, the trial court found otherwise. And as set out above there was testimony supporting this finding, such as both Nicholas and his current wife attending all of the children's activities.

¶38. We cannot say that the chancery court erred by finding that this factor weighed more in favor of Nicholas.

### III. The chancery court did not err by ordering Stephanie to pay child support.

¶39. For her third issue, Stephanie challenges the award of child support. She argues that "Nicholas testified that he sought no child support from [her]," so she should not have to pay any.

¶40. Yet this argument ignores the trial court's ruling, where the chancellor held that "child support legally vests in the children and not the parents," and so declined the apparent waiver by Nicholas.

¶41. The trial court's ruling is in accord with longstanding precedent that

> [c]ourts award child support to the custodial parent *for the benefit and protection of the child . . . . Such benefits belong to the child*, and the custodial parent has a fiduciary duty to hold them for the use of the child. Court-ordered child-support payments vest in the child as they accrue, and they may not thereafter be modified or forgiven, only paid.

*Roberts v. Roberts*, 110 So. 3d 820, 825 (¶13) (Miss. Ct. App. 2013) (emphasis added, citation, and internal quotation marks omitted) (quoting *Smith v. Smith*, 20 So. 3d 670, 674

(¶13) (Miss. 2009)); *see also Oster v. Ratliff*, 205 So. 3d 1149, 1155 (¶22) (Miss. Ct. App. 2016) (noting that child support "cannot be waived").

¶42.     It is of no moment that the father testified he didn't want child support; the child support is not for him, but for the children. The trial court recognized precedent and ordered Stephanie to open trust accounts for each child into which she was to deposit their child support. Accordingly, this issue has no merit.

### IV.    Stephanie's claim that Nicholas was not held to the same standard as a represented litigant is procedurally barred.

¶43.     For her fourth issue, Stephanie argues that the chancellor did not hold Nicholas, a pro se litigant, to the same standard under the Mississippi Rules of Procedure and Evidence as a represented litigant. Specifically, she argues that Nicholas committed a discovery violation by not disclosing evidence and witnesses he intended to use at trial. She also argues that more weight was afforded to Nicholas and his witnesses.

¶44.     Even accepting these arguments as true, Stephanie cites no case for her proposition that this is reversible error. "The Mississippi Supreme Court has held that it is the duty of the appellant to provide authority in support of an assignment of error." *Herrin v. Perkins*, 282 So. 3d 727, 732 (¶21) (Miss. Ct. App. 2019). Further, "[f]ailure to cite legal authority in support of an issue is a procedural bar on appeal." *Id*. at 733 (¶21). In any event, the chancellor "has the ultimate discretion to weigh the evidence[.]" *Stuckey v. Stuckey*, 341 So. 3d 1030, 1037 (¶16) (Miss. Ct. App. 2022).

¶45.     We find no merit to this assignment.

### V.     The chancery court had discretion to rely on and interpret the

**counseling records of the minor child.**

¶46.    For her last issue, Stephanie opposes the trial court's interpretation of Brittany's therapy records.  While she didn't object to the introduction of the records as evidence, she now protests the trial court's interpretation of the records.

¶47.    We first note that Stephanie did not object to the introduction of the records at trial, so this issue is procedurally barred.  Well-established precedent holds "that when a party fails to make a contemporaneous objection at trial, he waives any error on that issue on appeal." *McCullough v. McCullough*, 52 So. 3d 373, 379 (¶25) (Miss. Ct. App. 2009).  Furthermore, once the evidence is admitted at trial, it is up to the fact-finder how to weigh and interpret it.  "The chancellor has the ultimate discretion to weigh the evidence the way [s]he sees fit. The credibility of the witnesses and the weight of their testimony, *as well as the interpretation of evidence where it is capable of more than one reasonable interpretation*, are primarily for the chancellor." *Ethridge v. Ethridge*, 226 So. 3d 1261, 1264 (¶13) (Miss. Ct. App. 2017) (emphasis added) (quoting *Johnson v. Gray*, 859 So. 2d 1006, 1013-14 (¶36) (Miss. 2003)).

¶48.    We find no error.

### CONCLUSION

¶49.    We find the chancery court did not abuse its discretion by ordering the relocation of the children.  Next, we find that the chancery court's analysis of the *Albright* factors in this case was proper.  We also find that the chancery court did not err by ordering Stephanie to pay child support.  Further, Stephanie waived her claim that Nicholas was not held to the

same standard as a represented litigant, but it was nonetheless within the chancellor's discretion to weigh the conflicting testimony. Lastly, we find that the chancery court had the discretion to rely on and interpret the therapy notes, and the court did not abuse its discretion.

¶50. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McDONALD, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**